**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

IN RE: FOLGERS COFFEE MARKETING   )        Case No. 21-2984-MD-C-BP
           LITIGATION         )

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT OR,
<u>ALTERNATIVELY, STRIKE CLASS ALLEGATIONS</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.  CHOICE OF LAW .................................................................................... 1

III. LEGAL STANDARD.................................................................................. 2

IV.  ARGUMENT .............................................................................................. 2

    A.    Plaintiffs Have Standing Under Rule 12(b)(1) ........................................ 2

        1.    Plaintiffs Have Sufficiently Pleaded A Particularized And Concrete Injury ........................................................................................ 2

        2.    Plaintiffs Have Standing To Challenge Unpurchased Products ................ 5

        3.    Plaintiffs Have Standing To Seek Injunctive Relief ................................... 6

        4.    Plaintiffs Have Standing To Bring Nationwide Claims And Defendants' Attempts To Narrow These Claims Are Premature .................................. 8

    B.    The Court Has Personal Jurisdiction Over the Claims Of Non-Resident Class Members ........................................................................................ 10

    C.    Plaintiffs Adequately Plead Their Consumer Protection Claims......................... 11

        1.    Whether The Serving Representation Is Likely to Deceive a Reasonable Consumer Is A Question of Fact For A Later Stage ................................ 12

        2.    The "Up to" Language Does Not Ameliorate Consumer Deception ........ 13

        3.    Defendants' "Pot Method" Argument Fails.............................................. 17

        4.    Plaintiffs Satisfy Rule 9(b)........................................................................ 20

        5.    Defendants' Remaining Challenges To The Consumer Protection Claims Fail ....................................................................................................... 21

            i.    The California Claims Are Adequately Pleaded........................... 21

            ii.    The Court Has Jurisdiction Over Plaintiff Schoener's Claims ..... 22

            iii.    Plaintiff Mawby Adequately Pleads An MMPA Claim ............... 23

            iv.    Plaintiff Moser Adequately Pleads An ICFA And DTPA Claims 24

            v.    Plaintiff Marthaller Adequately Pleads A WCPA Claim ............. 25

vi.    Plaintiffs Sorin And Smith Adequately Plead FDUTPA Claims.. 26

vii.    Plaintiff Fahey Adequately Pleads His CPPA Claims................. 27

D.    Plaintiffs Adequately Plead Breach Of Warranty Claims...................................... 28

1.    Breach Of Express Warranty ...................................................... 28

2.    Breach Of Implied Warranty ...................................................... 29

E.    Plaintiffs Adequately Plead Common Law Claims .............................................. 30

1.    Common Law Fraud And Negligent Misrepresentation Claims ............. 30

2.    Plaintiffs' Unjust Enrichment Claim/ Quasi Contract Claim Survives .... 33

F.    The Nationwide Class Allegations Should Not Be Stricken ................................ 34

V.    CONCLUSION.............................................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
   949 F.3d 417 (8th Cir. 2020) ................................................................5

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2nd Cir. 2012)................................................................17

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-cv-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) .................................6

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)................................................................9

*Arnott v. U.S. Citizenship and Immigration Servs.*,
   290 F.R.D. 579 (C.D. Cal. 2012)................................................................9

*Arthur v. United Indus. Corp.*,
   2018 WL 1472500 (C.D. Cal. Mar. 23, 2018)........................................14, 16, 18

*Ashton v. J.M. Smucker Co.*,
   No. EDCV 20-992 JGB (SHKx), 2020 WL 8575140 (C.D. Cal. Dec. 16,
   2020) ................................................................ *passim*

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................33

*In re Auto. Refinishing Paint Antitrust Litig.*,
   358 F.3d 288 (3d Cir. 2004)................................................................10

*Barclay v. ICON Health & Fitness, Inc.*,
   No. 19-cv-2970, 2020 WL 6083704 (D. Minn. Oct. 15, 2020)................................................................6

*Bell Atl. Corp. v. Twombly*,
   500 U.S. 544 (2007)................................................................5

*Benson v. Fannie May Confections Brands, Inc.*,
   944 F.3d 639 (7th Cir. 2019) ................................................................12

*Biffar v. Pinnacle Foods Grp., LLC*,
   No. 16-0873-DRH, 2016 WL 7429130 (S.D. Ill. Dec. 22, 2016)...........................................13

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................16

*Bratton v. Hershey Co.*,
   No. 2:16-cv-4322-C-NKL, 2017 WL 2126864 (W.D. Mo. May 16, 2017) ...........................7

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
   137 S. Ct. 1773 (2017) ...................................................................................................11

*Browning v. Anheuser-Busch, LLC*,
   No. 20-CV-00889-SRB, 2021 WL 1940645 (W.D. Mo. May 13, 2021) ...................5, 6, 7, 33

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ....................................................................................16

*Calderon v. Sixt Rent a Car, LLC*,
   No. 19-cv-62408-SINGHAL, 2020 WL 700381 (S.D. Fla. Feb. 12, 2020) ...........................26

*Carlsen v. GameStop, Inc.*,
   833 F.3d 903 (8th Cir. 2016) ............................................................................................2

*Camasta v. Jos. A Bank Clothiers, Inc.*,
   No. 12 C 7782, 2013 WL 474509 (N.D. Ill. Feb. 7, 2013) .................................................25

*Carnahan v. Am. Family Mut. Ins. Co.*,
   723 S.W.2d 612 (Mo. Ct. App. 1987)................................................................................24

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..............................................................................21

*Chandler v. Van Dyke Farm Homeowners*,
   No. 01-5835, 2003 WL 21639021 (Fla. Cir. Ct. June 4, 2003) ...........................................31

*Chavez v. Wal-Mart Stores, Inc.*,
   No. CV 13-6429-GHK, 2014 WL 12591244 (C.D. Cal. Mar. 3, 2014) ..................................9

*Chew v. Am. Greetings Corp.*,
   754 F.3d 632 (8th Cir. 2014) ..........................................................................................32

*City of Clarkson Valley v. Mineta*,
   495 F.3d 567 (8th Cir. 2007) ............................................................................................3

*City of Wyoming v. Procter & Gamble Co.*,
   210 F. Supp. 3d 1137 (D. Minn. 2016)...............................................................................4

*Coffelt v. Kroger Co.*,
   No. EDCV 16-1471 JGB (KKx), 2017 WL 10543343 (C.D. Cal. Jan. 27,
   2017) ...........................................................................................................................3

*Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.,
   P.L.L.C.*,
   228 P.3d 1260 (Wash. 2010).............................................................................................26

iv

*Cooper v. Anheuser-Busch, LLC*,
No. 20-CV-7451 (KMK), _F.Supp.3d_, 2021 WL 3501203 (S.D.N.Y. Aug. 9, 2021) ...................................................................................................26, 27

*Correct Rx Pharmacy Servs., Inc. v. Cornerstone Automation Sys.*,
LLC, No. 3:15-CV-3006-N, 2018 WL 4680568 (N.D. Tex. Sept. 28, 2018) .........................30

*Cotton Patch Cafe, Inc. v. Micros Sys., Inc.*,
No. CIV.A. MJG-09-3242, 2012 WL 5986773 (D. Md. Nov. 27, 2012) ...............................33

*Cty. of Orange v. Tata Consultancy Servs. Ltd.*,
No. SACV 13-00683-JLS, 2016 WL 6542728 (C.D. Cal. Apr. 1, 2016) ...............................32

*Curtis Lumber Co., Inc. v. La. Pac. Corp.*,
618 F.3d 762 (8th Cir. 2010) .................................................................................................31

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig..*,
No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) ..............................................34

*Daniel v. Navient Sols., LLC*,
328 F. Supp. 3d 1319 (M.D. Fla. 2018) ................................................................................34

*Danielkiewicz v. Whirlpool Corp.*,
426 F. Supp. 3d 426 (E.D. Mich. 2019) ...............................................................................29

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
732 F.3d 902 (8th Cir. 2013) ................................................................................................32

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ..............................................................................................7, 8

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020)..................................................................................10

*In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) ......................................................................................17

*In re Plumbing Fixtures Litig.,*
342 F. Supp. 756 (J.P.M.L. 1972) ..........................................................................................1

*In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*,
97 F. 3d 1050 (8th Cir. 1996) ................................................................................................1

*Dunne v. Res. Converting, LLC*,
991 F.3d 931 (8th Cir. 2021) ................................................................................................32

*Early v. Henry Thayer Co.*,
No. 4:20-CV-1678 RLW, 2021 WL 3089025 (E.D. Mo. July 22, 2021) .................................7

v

*Eastwood v. Horse Harbor Found., Inc.*,
    170 Wash.2d 380 (Wash. 2010)........................................................................33

*Eifler v. Shurgard Cap. Mgmt. Corp.*,
    71 Wash. App. 684 (Wash. Ct. App 1993) .........................................................26

*In re FMC Corp. Patent Litig.*,
    422 F.Supp. 1163 (J.P.M.L. 1976)......................................................................10

*Forcellati v. Hyland's, Inc.*,
    876 F. Supp. 2d 1155 (C.D. Cal. 2012) ..............................................................34

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29,
    2013) ...................................................................................................................12

*FTC v. Febre*,
    No. 94 C 3625, 1996 WL 396117 (N.D. Ill. July 3, 1996) ..................................16

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
    No. 13-cv-0522-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014)........................8

*In re Gen. Mills Glyphosate Litig.*,
    No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ...................................4

*Gill Const., Inc. v. 18th & Vine Auth.*,
    No. 05-0608-CV-W-SOW, 2006 WL 1449861 (W.D. Mo. May 24, 2006)..............2

*Goldman v. Tapestry, Inc.*,
    501 F. Supp. 3d 662 (E.D. Mo. 2020)....................................................................5

*Gordon v. Sig Sauer, Inc.*,
    No. CV H-19-585, 2019 WL 4572799 (S.D. Tex. Sept. 20, 2019) .......................33

*Gratz v. Bollinger*,
    539 U.S. 244 (2003)................................................................................................5

*Grayson v. AT & T Corp.*,
    15 A.3d 219 (D.C. 2011) ......................................................................................27

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778 (1986)......................................................................................14

*Harrison v. Gen. Motors Co.*,
    No. 17-3128-CV-S-SRB, 2018 WL 6706697 (W.D. Mo. Dec. 20, 2018) ............11

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..............................................................................................27

vi

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)................................................................16

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)................................................................30

*Hobbs v. Gerber Prods. Co.*,
    No. 17 CV 3534, 2018 WL 3861571 (N.D. Ill. Aug. 14, 2018)........................25

*Holden Farms, Inc. v. Hog Slat, Inc.*,
    347 F.3d 1055 (8th Cir. 2003) ............................................................................2

*Hope v. Nissan N.A., Inc.*,
    353 S.W.3d 68 (Mo. Ct. App. 2011)..................................................................24

*Horne v. Flores*,
    557 U.S. 433 (2009)............................................................................................9

*Huskey v. Colgate-Palmolive Co.*,
    486 F. Supp. 3d 1339 (E.D. Mo. 2020)..............................................................11

*Johannessohn v. Polaris Indus., Inc.*,
    450 F. Supp. 3d 931 (D. Minn. 2020).................................................................3

*Johnson v. Atkins Nutritionals, Inc.*,
    No. 2:16-cv-04213-MDH, 2017 WL 6420199 (W.D. Mo. Mar. 29, 2017).............2

*Johnson v. Gen. Mills, Inc.*,
    275 F.R.D. 282 (C.D. Cal. 2011) ......................................................................22

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
    No. C17-541 RSM, 2017 WL 3313963 (W.D. Wash. Aug. 3, 2017)....................13

*Jones v. Monsanto Co.*,
    No. 19-0102-CV-W-BP, 2019 WL 9656365 (W.D. Mo. June 13, 2019)...............6, 33, 34, 35

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002), *as modified* (May 22, 2002)............................................14

*Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*,
    392 Ill. App. 3d 1 (Ill. App. Ct. 2009) ...............................................................25

*Knotts v. Nissan North Am., Inc.*,
    346 F.Supp.3d 1310 (D. Minn. Oct. 10, 2018) ..................................................11

*Krukas v. AARP, Inc.*,
    376 F. Supp. 3d 1 (D.D.C. 2019).......................................................................12

Case 4:21-md-02984-BP   Document 84   Filed 11/17/21   Page 8 of 50

*Krumm v. Kittrich Corp.*,
No. 4:19 CV 182 CDP, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019) ...................................11

*Kutza v. Williams-Sonoma, Inc.*,
No. 18-cv-03534-RS, 2018 WL 5886611 (N.D. Cal. Nov. 9, 2018).........................................9

*Lipton v. Chattem*,
No. 11 C 2952, 2012 WL 1192083 (N.D. Ill. Apr.10, 2012).................................................24

*Lovell v. P.F. Chang's China Bistro, Inc.*,
No. C14-1152RSL, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ...................................31

*Lytle v. Nutramax Labs., Inc.*,
No. EDCV 19-835 JGB (Spx), 2019 WL 8060077 (C.D. Cal. Dec. 6, 2019) ..................17, 18

*Mann v. Bahi*,
251 F. Supp. 3d 112 (D.D.C. 2017) .......................................................................................13

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998)......................................................................................................12

*Martin v. Monsanto Co.*,
No. ED CV 16-2168-JFW, 2017 WL 659014 (C.D. Cal. Feb. 16, 2017).........................18, 28

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ..................................................................................................21

*In Re: McCormick & Co., Pepper Prods. Mktg. and Sales Practices Litig.*,
422 F. Supp. 3d 194 (D.C. Jul. 10, 2019) .................................................................................3

*McCoy v. Nestle USA, Inc.*,
173 F. Supp. 3d 954 (N.D. Cal. 2016) ......................................................................................4

*McCrary v. Elations Co.*,
No. EDCV 13-0242 JGB (OPx), 2013 WL 6402217 (C.D. Cal. Apr.24, 2013) ...................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
No. 1:00-1898, MDL 1358(SAS), 2005 WL 106936 (S.D. N.Y. 2005) ................................10

*Miller v. Samsung Elecs. Am., Inc.*,
No. CIV.A. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015) ..........................................32

*Moore v. Compass Grp. USA, Inc.*,
No. 4:18CV1962 RLW, 2019 WL 4723077 (E.D. Mo. Sept. 26, 2019) ................................11

*Murphy v. Stonewall Kitchen, LLC*,
503 S.W.3d 308 (Mo. Ct. App. 2016).....................................................................................23

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
102 F.3d 660 (2d Cir. 1996)..................................................................................33

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995)...................................................................................14

*Panag v. Farmers Ins. Co. of Washington*,
166 Wash. 2d 27 (2009)..........................................................................................12

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*,
No. 3:12-cv-1366-HES-JBT, 2014 WL 12640371 (M.D. Fla. Aug. 14, 2014)......................29

*In re Peanut Crop Ins. Litig.*,
342 F. Supp. 2d 1353 (J.P.M.D.L. 2004).................................................................10

*In re Plumbing Fixture Cases*,
298 F. Supp. 484 (J.P.M.L. 1968)...........................................................................22

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
No. ML 10-02199 DDP, 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ...............................35

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013).....................................................................12

*Ransom v. VFS, Inc.*,
918 F.Supp.2d 888 (D. Minn. 2013) .......................................................................20

*Rawa v. Monsanto Co.*,
No. 4:17CV01252 AFG, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) ..................................15

*Rep. of the Phil. v. Marcos*,
862 F. 2d 1355 (9th Cir. 1988) ..............................................................................22

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
No. 19-CV-03613-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)................................4

*S. Broward Hosp. Dist. v. ELAP Servs., LLC*,
No. 20-CV-61007, 2020 WL 7074645 (S.D. Fla. Dec. 3, 2020).....................................12, 26

*Schulte v. Conopco, Inc*,
No. 4:19 CV 2546 RWS, 2020 WL 4039221 (E.D. Mo. July 17, 2020)................................14

*Scott v. Carr*,
No. C20-0236-RSM, 2020 WL 6381812 (W.D. Wash. Oct. 30, 2020) ..................................34

*Segovia v. Vitamin Shoppe, Inc*,
No. 14-CV-7061 (NSR), 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017)................................23

*SI03 Inc. v. Musclegen Rsch., Inc.*,
No. 1:16-CV-274 RLW, 2020 WL 2468412 (E.D. Mo. May 13, 2020) ...............................24

*Sorin v. The Folger Coffee Co.*,
No. 9:20-cv-80897 (S.D. Fla. June 4, 2020) ..........................................................................27

*Sotomayor v. Bank of Am., N.A.*,
377 F. Supp. 3d 1034 (C.D. Cal. 2019) .................................................................................11

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ...............................................................................................16

*State v. Beach Blvd Auto. Inc.*,
139 So. 3d 380 (Fla. Dist. Ct. App. 2014) .............................................................................14

*State ex rel. Coca-Cola Co. v. Nixon*,
249 S.W.3d 855 (Mo. 2008) ..................................................................................................24

*Stewart v. Kodiak Cakes, LLC*,
No. 19-cv-2454-MMA (MSB), 2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) ........................9

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ........................................................................9

*Strumlauf v. Starbucks Corp.*,
192 F. Supp. 3d 1025 (N.D. Cal. 2016) ...................................................................................4

*Summerhill v. Terminix, Inc.*,
637 F.3d 877 (8th Cir. 2011) .................................................................................................20

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ...................................................................................................9

*Suris v. Gilmore Liquidating, Inc.*,
651 So. 2d 1282 (Fla. Dist. Ct. App. 1995) ...........................................................................13

*Swinter Grp., Inc. v. Serv. Of Process Agents, Inc.*,
No. 4:17-CV-2759 RLW, 2019 WL 266299 (E.D. Mo. Jan. 18, 2019) ...................................11

*In re Takata Airbag Prod. Liab. Litig.*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..................................................................................22

*Thornton v. Pinnacle Foods Grp. LLC*,
No. 4:16-CV-00158 ..........................................................................................................12, 23

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*,
110 So. 3d 399 (Fla. 2013)....................................................................................................32

*Titus v. Sullivan*,
 4 F.3d 590 (8th Cir. 1993) ...................................................................................2

*Toca v. Tutco, LLC*,
 430 F. Supp. 3d 1313 (S.D. Fla. 2020) ................................................................29

*Torp v. Gen. Motors Acceptance Corp.*,
 No. 05-1042-CV-W-HFS, 2007 WL 2811437 (W.D. Mo. Sept. 24, 2007) ...........31

*Trujillo v. Apple Computer, Inc.*,
 581 F. Supp. 2d 935 (N.D. Ill. 2008) ...................................................................14

*U.S. v. Zaken Corp.*,
 57 F. Supp. 3d 1233 (C.D. Cal. 2014) ..................................................................16

*United States v. Any & All Radio Station Transmission Equip.*,
 207 F.3d 458 (8th Cir. 2000) .................................................................................2

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ..............................................................................20

*Vogt v. State Farm Life Ins. Co.*,
 963 F.3d 753 (8th Cir. 2020) ................................................................................32

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .................................................................................................8

*Wallace v. ConAgra Foods, Inc.*,
 747 F.3d 1025 (8th Cir. 2014) ................................................................................4

*Walter v. Hughes Comm'cns, Inc.*,
 682 F. Supp. 2d 1031 (N.D. Cal. 2010) ................................................................16

*Webb v. Dr Pepper Snapple Grp., Inc.*,
 No. 4:17-00624-CV-RK, 2018 WL 1955422 (W.D. Mo. Apr. 25, 2018) ..............12

*Weisblum v. Prophase Labs, Inc.*,
 88 F. Supp. 3d 283 (S.D.N.Y. 2015) .....................................................................33

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
 127 F. Supp. 3d 156 (S.D.N.Y. 2015) ...................................................................19

*White v. Just Born, Inc.*,
 No. 2:17-cv-04025-C-NKL, 2017 WL 3130333 (W.D. Mo. July 21, 2017) ............7

*Whittington v. KidsEmbrace, LLC*,
 No. CV 21-1830-JFW(JPRX), 2021 WL 3076646 (C.D. Cal. July 19, 2021) ........31

xi

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ................................................................33

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th. Cir. 2008) ........................................................12, 14

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ..............................................................21

*Witte v. Culton*,
    No. 4:11CV02036 ERW, 2012 WL 5258789 (E.D. Mo. Oct. 24, 2012)................................2

**Statutes**

28 U.S.C. § 1407(a) ..................................................................................1

Fed. R. Civ. P. 8 ....................................................................................33

Fed. R. Civ. P. 8(d)(3)..............................................................................33

# I.     INTRODUCTION

Plaintiffs' theory of liability articulated in their Amended Consolidated Class Action Complaint ("CAC") is straightforward: Defendants advertise on the front packaging of each of their Folgers ground coffee canisters ("Products") that they can make up to a specific number of 6 fl oz. cups of coffee ("Serving Representation(s)"). In reality, the Products contain on average just 68.29% of the ground coffee required to make the represented number of cups. Thus, the Serving Representation is false and deceptive and likely to mislead a reasonable consumer.

While Defendants advance a multitude of arguments in their Motion to Dismiss ("Mot."), the crux of their Motion is that consumers cannot be deceived, as a matter of law, because the phrase "up to" precedes the Serving Representation and the brewing instructions on the Products are open to more than one interpretation. However, ample legal authority (including the *Ashton* decision which rejected nearly all of Defendants' arguments made here), and common sense, dictate that tacking on the words "up to" on a representation does not change a consumer's reasonable belief that the product can make the number of servings promised based on the product's brewing instruction. Indeed, *neither of the two brewing methods* Defendants provide could *ever* make close to the number of servings represented. Given the immense shortfall of ground coffee in the Products, the "up to" qualifier is meaningless and fails to mitigate the deception. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion.

# II.    CHOICE OF LAW

In cases transferred under 28 U.S.C. § 1407(a), the substantive law of the transferor forum applies after transfer. *In re Plumbing Fixtures Litig.*, 342 F. Supp. 756, 758 (J.P.M.L. 1972). Thus, "[w]hen considering questions of state law [] the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.*" In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996). However, when analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. Id.

## III. LEGAL STANDARD

When confronted with a facial challenge under Rule 12(b)(1), the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). In other words, "all of the factual allegations concerning jurisdiction are presumed to be true[.]" *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). On a Rule 12(b)(6) motion to dismiss it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *Gill Const., Inc. v. 18th & Vine Auth.*, No. 05-0608-CV-W-SOW, 2006 WL 1449861, at *1 (W.D. Mo. May 24, 2006). Moreover, the Court should "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). The Court should only dismiss those claims for which it appears "beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1059 (8th Cir. 2003).

## IV. ARGUMENT

### A. Plaintiffs Have Standing Under Rule 12(b)(1)[1]

#### 1. Plaintiffs Have Sufficiently Pleaded a Particularized and Concrete Injury

Defendants do not dispute (nor could they) that Plaintiffs (with the exception of Fahey) allege that they saw and relied on the Serving Representation in making their decisions to purchase the Products, and that they paid more for the Products based on the Serving Representation. CAC ¶¶ 9-18. The dispositive question, then, is whether these allegations sufficiently plead a financial injury and a causal connection. They do. *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-cv-04213-MDH, 2017 WL 6420199, at *3 (W.D. Mo. Mar. 29, 2017) (similar allegations were "sufficient to support standing"); *see also*

---

[1] As an initial matter, because Walmart was omitted from the CAC as a Defendant, it has been effectively dismissed from the case and the Court need not enter a formal dismissal. *Witte v. Culton*, No. 4:11CV02036 ERW, 2012 WL 5258789, at *2 (E.D. Mo. Oct. 24, 2012). However, Smith is permitted to reallege his claims against Defendants, rather than Walmart.

*Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 967 (D. Minn. 2020), *aff'd*, 9 F.4th 981 (8th Cir. 2021) (recognizing "that a consumer who pays a premium for a product based on a defendant's actionable misrepresentations or omissions has suffered a legally cognizable injury[]" under the "MMPA, UCL, CLRA, FDUTPA, GBL, NCUDTPA, and MCFA."). The standing burden at the pleadings stage is low, and "general factual allegations" of economic injury suffice. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Indeed, nearly identical allegations were sufficient in the underlying case *Ashton v. J.M. Smucker Co.*, No. EDCV 20-992 JGB (SHKx), 2020 WL 8575140, at *5 (C.D. Cal. Dec. 16, 2020).[2]

Just as Defendants tried unsuccessfully in *Ashton*, they again attempt to circumvent this conclusion by arguing at various points throughout the Motion that Plaintiffs lack standing because they fail to allege the ***actual*** Products they purchased were tested and found incapable of making the number of cups represented. *See, e.g.*, Mot. at 2 ("No Plaintiff alleges that they used the Products or tried to make the represented number of servings … they never tried 'scooping out every grain of ground coffee in the Products.'") (citing CAC ¶ 23).[3] But this is not a requirement for standing.[4] As Judge Bernal held in *Ashton,* "Plaintiffs need not allege that they actually attempted to make the represented servings and

---

[2] Further, contrary to Defendants' assertion that California Plaintiffs Ashton, Ibarra and Tan's UCL, CLRA, and FAL claims are "deficient because Plaintiffs fail to adequately allege a cognizable economic injury[,]" Mot. 18, these allegations also establish statutory standing under those statutes. *See Coffelt v. Kroger Co.*, No. EDCV 16-1471 JGB (KKx), 2017 WL 10543343, at *5 (C.D. Cal. Jan. 27, 2017) ("[T]o have standing under the UCL or CLRA, Plaintiff must sufficiently allege (1) that he suffered an economic injury, and (b) that he actually relied on the purported material misrepresentation."); *Ashton*, 2020 WL 8575140, at *4 (same).

[3] Perhaps recognizing that their "standing" argument failed in *Ashton*, Defendants repackage this argument here as one under Rule 9(b). *See, e.g.,* Mot. at 9-11 ("Plaintiffs … fail to allege *when* or *where* they were unable to make the number of cups they allege Defendants represent."); ("*how* do Plaintiffs know the servings cannot be attained?") As discussed in Section IV.C.4, Defendants misconstrue the pleading requirements of Rule 9(b). In any event, Plaintiffs address Defendants' repackaged standing argument here.

[4] Nor are Plaintiffs required to allege personal knowledge of Defendants' unlawful conduct. *See In Re: McCormick & Co., Pepper Prods. Mktg. and Sales Practices Litig.*, 422 F. Supp. 3d 194, 246 (D.C. Jul. 10, 2019) ("plaintiffs cannot be criticized for their inability to testify to actual fill levels since this inability is attributable to the success of defendants' deception" in a slack-fill case).

came up short." *Ashton*, 2020 WL 8575140, at *5. Judge Bernal went on to appropriately analogize

this case to the decisions in *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025 (N.D. Cal. 2016) and

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-CV-03613-WHO, 2020 WL 1245130 (N.D. Cal.

Mar. 16, 2020), where the courts similarly held such allegations are not a requirement for standing in

cases where, as here, "Plaintiffs allege that the Products are *uniformly* underfilled." *Id.* (emphasis

added). As Judge Bernal astutely observed, "[i]f all Products are allegedly underfilled and Plaintiffs

allege that they purchased the Products, 'it is reasonable to conclude that – *even without measuring*

– Plaintiffs' [Products] were underfilled.'" *Id.* (emphasis added) (quoting *Strumlauf*, 192 F. Supp. 3d

at 1030) (rejecting argument that plaintiffs failed to allege that the *particular* lattes they purchased were

underfilled, because plaintiffs alleged that Starbucks *uniformly* underfilled lattes)); *see also Rice-*

*Sherman,* 2020 WL 1245130, at *5-7 (rejecting argument that plaintiffs were required to test the specific

products they purchased because "[a] fair reading of their FAC shows that they allege that all … products

are falsely advertised[]" and distinguishing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir.

2014), on which Defendants rely here, on the basis that there the plaintiffs failed to allege that "'all or even

most' of the accused products were falsely advertised… [and] [t]hey lacked standing because it was

merely speculative whether they purchased any non-kosher hot dogs").[5]

Here, the CAC alleges that *all* of the Products have a uniform Serving Representation and *all* have

a shortfall in ground coffee. CAC ¶¶ 33-42. These allegations are consistent with—if not stronger and

---

[5] Other cases have distinguished *Wallace* on similar grounds. *See City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1150–51 (D. Minn. 2016) (holding *Wallace* was "not controlling" in a "misrepresentation-based case" where "[p]laintiffs [we]re not alleging that a poorly-manufactured subset of [the product] [were] responsible for their injuries; they [we]re alleging that multiple entire product lines … [we]re causing their injuries."); *In re Gen. Mills Glyphosate Litig.*, No. 16-2869 (MJD/BRT), 2017 WL 2983877, at *3 (D. Minn. July 12, 2017) (distinguishing *Wallace* where "[p]laintiffs have alleged that <u>all</u> Nature Valley Products contain glyphosate … and concerns regarding the details of the alleged testing [we]re issues properly addressed at a later stage in the proceedings.") (emphasis in original); *see also McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 964-65 (N.D. Cal. 2016) (plaintiff not required to allege she was "certain" that the "objectionable practice" in question "was used to produce the specific item" she purchased).

more detailed than—those in *Strumlauf* and *Rice-Sherman*. Further, Defendants never dispute the basic math in the CAC, or the fact that one tablespoon of ground coffee weighs five grams. Mot. at 13. While Plaintiffs look forward to proving the truth of these allegations, at this stage, the Court must accept them as true. *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 556 (2007). Thus, Plaintiffs have clearly alleged injury and causation.[6]

### 2. Plaintiffs Have Standing To Challenge Unpurchased Products

Defendants assert Plaintiffs lack standing to challenge the Products they did not purchase. Mot. at 5-6. Although neither the Missouri Supreme Court nor the Eighth Circuit have addressed this issue, two Missouri federal courts recently have, concluding that Missouri courts follow the majority "substantially similar" test from the Ninth Circuit. *See Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 667 (E.D. Mo. 2020) (declining to follow *Kelly* and *Smith* (cited by Defendants) and agreeing with the district courts that have concluded plaintiffs have standing to assert claims on behalf of a class as to products they have not purchased as long as the products and alleged misrepresentations are substantially similar); *Browning v. Anheuser-Busch, LLC*, No. 20-CV-00889-SRB, 2021 WL 1940645, at *8 (W.D. Mo. May 13, 2021) (finding the "substantially similar" approach "most persuasive" and noting that the approach in which "plaintiff can represent only those who purchased the exact same product...[is] irreconcilable with the Supreme Court's decision in *Gratz v. Bollinger*, 539 U.S. 244 (2003)"). Indeed, in *Browning*, Judge Bough found the plaintiffs had standing to challenge *all* of defendant's beverage products due to the uniformity of the allegations: none of the challenged products contained distilled

---

[6] *Cahen v. Toyota Motor Corp.*, is distinguishable for similar reasons. There, the plaintiffs made speculative allegations that the software in certain cars was subject to hacking, but failed to allege any hacking occurred outside of controlled experiments. 147 F. Supp. 3d 955, 966, 968 (N.D. Cal. 2015). Thus, the court was concerned with whether a "future risk of harm" was too speculative–not that the plaintiffs failed to allege the specific cars they purchased were hacked. *Id.* at 966-71. *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 422 (8th Cir. 2020), cited by Defendants, is also inapposite because there, plaintiff only made vague assertions about the printer speeds, and there were no allegations asserting a uniform practice that affected a class of consumers. Here, Plaintiffs plead a uniform deficiency in ground coffee in each Product, outlining exactly the number of cups promised versus the number of cups consumers receive for each Product.

liquor or wine. Likewise, in *Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020), plaintiffs had standing to challenge different treadmill models where the court, collecting cases, observed that "[m]ost courts follow a more nuanced approach, however, asking whether 'the products and alleged misrepresentations are substantially similar.'" (citation omitted).[7]

In conducting the "substantially similar" test, the Court can consider a variety of factors—including "similarity in products, similarity in claims, similarities in injury to consumers—to determine which unpurchased products can be included by plaintiffs in their in [sic] class actions." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at *6 (N.D. Cal. Mar. 13, 2014). Each of these considerations militate in Plaintiffs' favor. First, this case involves the same type of consumer goods—ground coffee. Second, the challenged Serving Representations are materially identical across each Product—the only variance is the actual number of cups promised by the Serving Representation, which depends on the canister's size. Third, the injury to consumers is uniform—each consumer paid more for the Products based on the mistaken but reasonable belief that it contained substantially more ground coffee than it actually did. Thus, the Products are "substantially similar" for purposes of standing. Indeed, Judge Bernal used precisely this reasoning in rejecting Defendants' identical argument in *Ashton*. *See Ashton*, 2020 WL 8575140, at *6-7. At the very least, the Court should not disturb *Ashton*.[8]

### 3. Plaintiffs Have Standing to Seek Injunctive Relief

Defendants summarily contend Plaintiffs lack standing to seek injunctive relief because "they only allege *past* harm." Mot. at 6. Moreover, Defendants claim that "[b]y stating they would have paid less

---

[7] Notably, *Goldman*, *Browning* and *Barclay* were decided **after** *Kelly*, *Smith*, and other decisions on which Defendants rely, recognizing this Circuit's trend toward the "substantially similar" approach.

[8] Alternatively, the Court can defer ruling on this issue until class certification, as this Court has done previously. *See Jones v. Monsanto Co.*, No. 19-0102-CV-W-BP, 2019 WL 9656365, at *10 (W.D. Mo. June 13, 2019) (Phillips, J.) (declining to dismiss claims challenging unpurchased products and noting "the wisdom of waiting and addressing the issue once Plaintiffs file their Motion for Class Certification."); *see also Browning*, 2021 WL 1940645, at *8 (same).

6

[had they known that the Products did not contain enough ground coffee to meet the Serving Representation], Plaintiffs "effectively … conce[de] that [they] do[ ] not intend to purchase the product in the future." *Id*. (citing *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018)). But Plaintiffs (except Fahey) *do* allege an intent to purchase in the future:

> ***Plaintiffs, except for Plaintiff Fahey, are also susceptible to reoccurring harm in that they desire to continue to purchase the Products but cannot be certain Defendants have corrected their deceptive and false advertising scheme*. Indeed, Plaintiffs, except for Plaintiff Fahey, regularly shop at stores where the Products are sold, and they would like to continue purchasing the Products. However, they currently cannot trust that Defendants will label and/or advertise the Products they purchased in the past truthfully and in compliance with applicable law.**

CAC ¶ 24 (emphasis added); *see also id. ¶* 23.

These allegations "are enough to confer standing to pursue injunctive relief." *Browning,* 2021 WL 1940645, at *7 (plaintiffs had Article III standing to seek injunctive relief when they alleged "that, while currently restraining from purchasing the Products, [plaintiffs]  have both the intention and desire to purchase the Product if they were confident in AB's packaging"); *White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *10 (W.D. Mo. July 21, 2017) (plaintiff could pursue injunctive relief when alleging "if [defendant] changes its practices, he is likely to buy the products in the future."); *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864, at *9 (W.D. Mo. May 16, 2017) (same); *Early v. Henry Thayer Co.,* No. 4:20-CV-1678 RLW, 2021 WL 3089025, at *17 (E.D. Mo. July 22, 2021) (same).[9]

Any argument Defendants submit on reply that Plaintiffs' supposed knowledge of the shortfall of ground coffee defeats standing fails on factual and legal grounds. Factually, Plaintiffs cannot be expected to perform math equations at the time of purchase just to be sure that the product is truthfully advertised. Legally, this argument is irreconcilable with *Davidson*[10] and above-referenced Eighth Circuit law holding

---

[9] Judge Bernal likewise held similar allegations of future harm sufficient in *Ashton* under the Ninth Circuit's standard expressed in *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 969 (9th Cir. 2018). *See Ashton*, 2020 WL 8575140, at *7.

[10] In *Davidson,* the Ninth Circuit expressly rejected this premise: "[k]nowledge that the advertisement

that a consumer's inability to rely with confidence on a representation is a tangible harm. This harm exists regardless of whether a consumer can fact-check the representation.

Defendant's reliance on *DaCorta*, *In re Simply Orange Juice*, *In re Coca-Cola*, *Anibal, and Harmon*, is unavailing because in each of those cases there were no allegations that the plaintiff wished to purchase the product in the future or even alleged a likelihood of future injury. As such, Plaintiffs (except Fahey) have Article III standing to seek injunctive relief.

4. <u>Plaintiffs Have Standing To Bring Nationwide Claims and Defendants' Attempts to Narrow these Claims Are Premature</u>

Defendants contend Plaintiffs lack standing to seek relief on behalf of putative class members living in 43 states "because [Plaintiffs] were not injured under those states' laws." Mot. at 5. This precise argument was rejected in *Ashton*, where Plaintiffs Ashton, Schoener, and Ibarra's nationwide claims were upheld. There, Judge Bernal explained:

> Plaintiffs do not claim to have "<u>individual</u> standing" to bring claims on behalf of putative class members, but rather, they seek to represent a class. In a class action, the named plaintiffs regularly litigate not only their own claims but also claims of other class members based on transactions in which the named plaintiffs played no part. Moreover, Plaintiffs are correct that Defendants appear to conflate the concept of standing with choice-of-law analysis. The issue here is not whether the Article III standing requirements are met, but whether California law can apply to non-resident class members.

*Ashton,* 2020 WL 8575140, at *7 (internal citations and quotations omitted).

Consistent with *Ashton*, it is well-established that class actions are an exception to the general rule that one person cannot litigate injuries on behalf of another. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Thus, plaintiffs in class actions can litigate injuries that they themselves would not have standing to litigate as long as the plaintiffs have standing to pursue their individual claims. *See Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-0522-VC, 2014 WL 2451290, at *4 (N.D. Cal. June 2, 2014) ("In fact, '[e]very time a lead plaintiff prosecutes an action on behalf of a class, she brings claims based

---

or label was false in the past does not equate to knowledge that it will remain false in the future." 889 F.3d at 969.

on injuries she did not personally suffer—in other words, claims she could not have advanced individually.'"). Here, the allegations of Defendants' unlawful conduct are based on a common injury suffered by Plaintiffs and all Class members. In short, "[i]t is improper for this Court to analyze unnamed class members' Article III standing where, as here, Defendants do not successfully challenge the putative class representatives' standing." *Arnott v. U.S. Citizenship and Immigration Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012) (citing *Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring)).[11]

Despite *Ashton*, Defendants *again* conflate standing with a choice-of-law analysis. The issue raised by Defendants is not whether the Article III standing requirements are met, but rather which laws apply to non-resident class members. *See Chavez v. Wal-Mart Stores, Inc.*, No. CV 13-6429-GHK (PJWx), 2014 WL 12591244, at *2 (C.D. Cal. Mar. 3, 2014) (rejecting same argument, explaining, "Wal-Mart appears to conflate the concept of standing with choice-of-law analysis. The issue here is not whether the Article III standing requirements are met, but whether California law can apply to non-resident class members[,]" and finding a choice of law analysis "premature"). Because Defendants' argument boils down to a matter of choice of law—discussed *infra* at Section IV.F — it should be addressed at class certification.

Defendants' cases, *Stewart v. Kodiak Cakes, LLC*, No. 19-cv-2454-MMA (MSB), 2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) and *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *13 (E.D.N.Y. Sept. 22, 2015), are distinct because in each of those cases the plaintiffs sought to bring state-specific consumer protection claims from states in which no named plaintiff lived. Here, however, the only claims for which there are no state-resident class representatives are the common law Counts XIII-XVI. This is acceptable. *See Kutza v. Williams-Sonoma, Inc.*, No. 18-

---

[11] Defendants' argument is also inconsistent with Supreme Court and Eighth Circuit law. *See In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) ("A putative class action can proceed as long as one named plaintiff has standing."); *Horne v. Flores*, 557 U.S. 433, 446 (2009); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977).

cv-03534-RS, 2018 WL 5886611, at *3 (N.D. Cal. Nov. 9, 2018) (rejecting same argument, noting "this is not an instance where a California plaintiff seeks to represent residents of other states under a plethora of state consumer statutes with potentially differing procedural and substantive requirements, and scopes. Rather, the claims are brought under . . . the common law, which likely will not vary much among the states.")

## B. The Court Has Personal Jurisdiction Over the Claims Of Non-Resident Class Members

Defendants argue this Court lacks personal jurisdiction over the claims of non-resident Class members. Mot at 7. The Court can easily dispose of this argument because transfers under Section 1407 are "simply not encumbered by considerations of *in personam* jurisdiction and venue … the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer." *In re FMC Corp. Patent Litig.*, 422 F.Supp. 1163, 1165 (J.P.M.L. 1976) (citations omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* No. 1:00-1898, MDL 1358(SAS), 2005 WL 106936, *6 (S.D. N.Y. 2005) ("In multi-district litigation, [S]ection 1407 serves as this Court's statutory source of power for personal jurisdiction.") An opposite conclusion would "frustrate the essential purpose of Congress in enacting Section 1407." *In re Peanut Crop Ins. Litig*., 342 F. Supp. 2d 1353, 1354 (J.P.M.D.L. 2004)*; In re Delta Dental Antitrust Litig*., 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020) ("We are not persuaded that *Bristol-Myers* necessitates unraveling more than forty years of MDL jurisprudence.")

Here, the Court has the jurisdiction transferred to it by the transferor courts, including *Ashton* for example, where Judge Bernal concluded that the court had sufficient personal jurisdiction over the claims of the non-resident Class members. *See Ashton*, 2020 WL 8575140, at *8 (rejecting application of *Bristol-Myers* to class actions and holding court had "personal jurisdiction over out-of-state putative class members."). As such, this Court "can exercise personal jurisdiction to the same extent that the transferor court could." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir. 2004).

Even if this Court wished to consider Defendants' recycled argument *de* novo, *in personam* jurisdiction is nonetheless satisfied here. Defendants' argument hinges on whether *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) ("*BMS*") alters extant Eighth Circuit law that federal courts have jurisdiction over absent class members' claims. It does not. Although there is a split in authority on whether *BMS* applies to class actions, district courts in this Circuit have consistently and more recently held that it does not. *See Harrison v. Gen. Motors Co*., No. 17-3128-CV-S-SRB, 2018 WL 6706697, at *7 (W.D. Mo. Dec. 20, 2018); *Krumm v. Kittrich Corp*., No. 4:19 CV 182 CDP, 2019 WL 6876059, at *5 (E.D. Mo. Dec. 17, 2019); *Swinter Grp., Inc. v. Serv. Of Process Agents, Inc*., No. 4:17-CV-2759 RLW, 2019 WL 266299, at *3 (E.D. Mo. Jan. 18, 2019); *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1352 (E.D. Mo. 2020); *Moore v. Compass Grp. USA, Inc.*, No. 4:18CV1962 RLW, 2019 WL 4723077, at *9 (E.D. Mo. Sept. 26, 2019); *Knotts v. Nissan North Am., Inc.*, 346 F.Supp.3d 1310, 1332 (D. Minn. Oct. 10, 2018).

Defendants cite In re: Dicamba Herbicides Litig., 359 F. Supp. 3d 711, 723 (E.D. Mo. 2019) to argue for the application of BMS to class actions. However, In re Dicamba is among the minority of district courts in this circuit to extend BMS to class actions, and largely relied on district courts in the Northern District of Illinois, which are also among the minority of district courts across the country to extend BMS to class actions. See Knotts, 346 F.Supp.3d at 1331; Huskey, 486 F. Supp. 3d at 1351.[12]

C.      **Plaintiffs Adequately Plead Their Consumer Protection Claims**

The lynchpin of Defendants' argument is that the Serving Representations are preceded by an "up to" phrase and that the brewing instructions are open to "obvious alternative explanations." Mot. at 10-11. Consequently, according to Defendants, a reasonable consumer could not be deceived as a matter of law,

---

[12] Alternatively, the Court can defer ruling on this issue until class certification. *See Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) (determination of personal jurisdiction over claims of putative class members not required at the pleading stage).

and Plaintiffs' statutory consumer protection claims should be dismissed. *Id*. at 13–15. These arguments—which hinge on a factual inquiry regarding a reasonable consumer's interpretation—fail on multiple levels.

     1.   <u>Whether The Serving Representation is Likely to Deceive a Reasonable Consumer Is A Question of Fact For A Later Stage</u>

California's CLRA, UCL, and FAL, New York's GBL §§ 349 and 350, Missouri's MMPA, Illinois' ICFA, Florida's FDUTPA, Washington's WCPA, and D.C.'s CPPA all prohibit false, deceptive, or unfair conduct in trade or commerce and courts apply the "reasonable consumer" standard to determine whether a representation is false or misleading under these statutes.[13] Under that standard, Plaintiffs must only show that consumers are "likely to be deceived" by a representation. *See Williams*, 552 F.3d at 938.

However, "[w]hether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss." *Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3 (E.D. Mo. Aug. 1, 2016)*; see also Williams*, 552 F.3d at 938–39; *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013). Indeed, dismissal of false advertising claims is proper only in a "rare situation[.]" *Thornton*, 2016 WL 4073713, at *3 n. 3 (citing *Williams*, 552 F.3d at 939); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (to grant a motion to dismiss, label must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled") (citation omitted); *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB (OPx), 2013 WL 6402217, at *6 (C.D. Cal. Apr. 24, 2013) (denying motion to dismiss on grounds that defendant's "advertising claim [did] not make it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived") (internal

---

[13] *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th. Cir. 2008); *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998); *Webb v. Dr Pepper Snapple Grp., Inc.*, No. 4:17-00624-CV-RK, 2018 WL 1955422, at *3 (W.D. Mo. Apr. 25, 2018); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *S. Broward Hosp. Dist. v. ELAP Servs., LLC*, No. 20-CV-61007, 2020 WL 7074645, at *4 (S.D. Fla. Dec. 3, 2020); *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50 (2009); *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 39 (D.D.C. 2019).

quotation omitted).[14]

This is not one of the "rare situations" where it is impossible to prove that reasonable consumers are likely to be misled. Here, the Serving Representation is a clear-cut statement that the Products can make the represented number of servings if the brewing instructions are followed. As recognized in *Ashton*:

> Plaintiffs' allegations do not make it "impossible for the plaintiff[s] to prove that a reasonable consumer was likely to be deceived" by Defendants' represented servings. While it is certainly possible that consumers would understand that the Products could make up to the stated servings by using less ground coffee than recommended per cup, **it is also possible that consumers would expect to be able to make the represented servings following the recommended brewing instructions.** The Court cannot "conclude as a matter of law that a reasonable consumer would not be misled by the [Defendants'] label's 'makes up to' language[.]" *Arthur v. United Indus. Corp.*, 2018 WL 1472500, at *6-7 (C.D. Cal. Mar. 23, 2018). **If anything, the alleged deception "is probable enough that the issue should be decided by a trier of fact, not on a motion to dismiss**." *Strumlauf*, 192 F. Supp. 3d at 1034.

*Ashton*, 2020 WL 8575140, at *10 (some citations omitted, emphasis added).

### 2. The "Up to" Language Does Not Ameliorate Consumer Deception

A consumer who reads the phrase "makes up to 240 6 fl oz cups" reasonably believes that the Product can make 240 6 fl oz cups if the brewing directions are followed. CAC ¶¶ 9-18, 46. Conversely, a consumer reading the same phrase would ***not*** reasonably think that the Product will make only 173 cups, or 72% of the Serving Representation if the brewing directions are followed. *Id.* ¶¶ 39-41.

Defendants argue that the Serving Representation is technically true because the "up to" statement transmogrifies a demonstrably false statement into a truthful one. *See* Mot. at 13. But Defendants' argument ignores common sense. Taking the argument to its logical conclusion proves the point: even one

---

[14] *Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1995) (same); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541 RSM, 2017 WL 3313963, at *3 (W.D. Wash. Aug. 3, 2017) (same); *Biffar v. Pinnacle Foods Grp., LLC*, No. 16-0873-DRH, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (same); *Mann v. Bahi,* 251 F. Supp. 3d 112, 126 (D.D.C. 2017) (same).

single tablespoon of ground coffee could technically make a total of 240 servings, but each "serving" would be so diluted that it would cease to be a drinkable cup of coffee. Moreover, the underlying premise of Defendants' argument is legally without merit, as the alleged consumer protection laws all "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002); *Williams*, 552 F.3d at 938 (same, adopting *Kasky*).[15] Therefore, even if the "up to" statement make the Serving Representation true in some constrained sense, the Serving Representation is nonetheless misleading because a reasonable consumer would expect the Product can make the full serving number if Defendants' instructions are followed.

Indeed, a substantial body of law prohibits the type of "up to" representations made here. For example, in *Arthur v. United Indus. Corp.*, No. 2:17-cv-06983-CAS(SKx), 2018 WL 1472500, at *6-7 (C.D. Cal. Mar. 23, 2018), the court rejected the defendant's argument that because its weed killer product contained enough concentrate to make the "up to" number of gallons under the lowest of three mixing level instructions, that its "up to" representation could not be deceptive. Instead, the court held that it could not "conclude as a matter of law that a reasonable consumer would not be misled by the Concentrate label's 'makes up to' language." *Id.* Under *Arthur's* reasoning, the Court should not decide on the pleadings how a reasonable consumer could interpret the "up to" statement. *Id.* at *7 ("whether defendant's Concentrate labels are misleading or deceptive is a finding of fact …."). But even delving into those factual waters, the facts here are far stronger for Plaintiffs than those in *Arthur*, because as discussed *infra* at Section IV.C.3, **the Products here provide no brewing instructions under which the Serving**

---

[15] *See Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995) (same for GBL); *Schulte v. Conopco, Inc*, No. 4:19 CV 2546 RWS, 2020 WL 4039221, at *3 (E.D. Mo. July 17, 2020), *aff'd sub nom. Schulte v. Conopco, Inc*., No. 20-2696, 2021 WL 1971957 (8th Cir. May 18, 2021) (same for MMPA); *Trujillo v. Apple Computer, Inc*., 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (same for ICFA); *State v. Beach Blvd Auto. Inc.*, 139 So. 3d 380, 387 (Fla. Dist. Ct. App. 2014) (same for FDUTPA); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785 (1986) (same for WCPA).

*Representation can be attained*.

In a nearly identical case to *Arthur*, *Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG, 2017 WL 3392090, at *1–2 (E.D. Mo. Aug. 7, 2017), the plaintiff claimed the weed killer failed to yield its "Makes up to 23 Gallons" representation. The backside of that product contained a booklet label with instructions stating "2½ fl oz Per Gallon of Water," which, if followed, would only yield 14.08 gallons of solution—not 23 gallons. *Id.* at *1. Like *Arthur* but unlike here, the product also contained instructions for how the "up to" representation could ***actually*** be attained. *Id.* at *1 ("For easy to kill weeds such as seedlings, add 1-1/2 fl oz (3 Tbs) to 1 gallon of water."). However, the plaintiff relied on the "2½ fl oz Per Gallon of Water" instructions and, as a result, obtained only 14.08 gallons of solution. *Id.* The *Rawa* court considered *Maloney v. Verizon Internet Servs., Inc.*, 413 Fed.Appx. 997, 999 (9th Cir. 2011) and other "up to" cases that have failed, but nonetheless held that "it cannot be said as a matter of law that Super Concentrate's labelling was not deceiving." *Id.* at *4. Relevant to Defendants' brewing instructions here, the court explained:

> The "Makes Up to 23 Gallons" label … may well put a reasonable consumer on notice to check elsewhere on the container's labelling for mixing directions to obtain that yield. And indeed, mixing directions were provided on the circular diagram on the front of the back booklet label. But those directions [like Folgers' here], if followed, would result in much less than 23 gallons of weed killer … And the front of the back label did not qualify that the listed ratio ***was for the strongest solution***, with more diluted options available.

*Id*.

*Rawa* also specifically rejected the same arguments Defendants raise here, including (1) that the "Up to X Gallons" labeling statement did not violate the MMPA because it was "objectively true and not a misrepresentation[,]" *Id.* at *2; *see* Mot. at 13,17, (2) that "'[M]akes up to' describes the upper boundary of a range of gallons that can be made, and a reasonable consumer would understand this and be on notice that there are different dilution rates[,]" *Id.*; *see* Mot. at 13, and (3) the "characteriz[ation] [of] the '2½ fl oz Per Gallon of Water' statement [i.e., the 1:1 ratio] in the circular diagram on the back label as just an example of how to use the product." *Id.*; *see* Mot. at 2, 12.

15

"Up to" statements have also been held actionable in many other contexts. *See, e.g., Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1172–73 (E.D. Cal. 2013) ("up to" battery life statement actionable because product was not accompanied by any disclosures and plaintiff alleged all laptops had battery life substantially less than that represented); *Walter v. Hughes Comm'cns, Inc.*, 682 F. Supp. 2d 1031, 1043 (N.D. Cal. 2010) (denying motion to dismiss based on allegations that plaintiff "was unable to experience the speeds that [defendant] had advertised its service as reaching 'up to,' even during non-peak hours"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (certifying class where "the central predominating question is whether Defendants' marketing statements about 'up to 6X BETTER ABSORPTION' or 'effectiveness' [are] materially misleading").[16]

Defendants' contrary interpretation of the "up to" language is, at best, a competing theory that they can advance later in the case. On a motion to dismiss, however, the Court should accept Plaintiffs' theory as the correct one. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party . . . and would impose the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly* explicitly reject.") (internal citation omitted); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (when

---

[16] Persuasive FTC authority also recognizes the likelihood of "up to" statements to deceive consumers. *See, e.g., FTC v. Febre*, No. 94 C 3625, 1996 WL 396117, at *2 (N.D. Ill. July 3, 1996) (in FTCA § 5(a) case based on allegations of unsubstantiated claims that defendants' work-at-home programs would earn consumers specific sums of money, rejecting the defenses that "the language used was conditional (e.g., one "*could* earn ***up to***" or it was "***possible***" to make the indicated amount)" and thus there was no "***guarantee***" that consumers would earn the stated level of earnings, and concluding that consumers reasonably believe "the statements of earnings potential represent typical or average earnings.") (emphasis added); *U.S. v. Zaken Corp.*, 57 F. Supp. 3d 1233, 1239 (C.D. Cal. 2014) (same). In June 2012, the FTC released a study "indicating that when marketers use the phrase 'up to' in claims about their products, many consumers are likely to believe that they will achieve the maximum 'up to' results." *See* https://www.ftc.gov/news-events/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results (last accessed November 17, 2021). The Court can take judicial notice this FTC press release article. *See Arthur*, 2018 WL 2276636, at *4 (taking judicial notice of the same FTC press release article).

"there are two alternative explanations ... plaintiff's complaint survives a motion to dismiss … [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."); *Ashton,* 2020 WL 8575140, at *9 (adopting *Starr*); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2nd Cir. 2012).[17]

### 3.  Defendants' "Pot Method" Argument Fails

Neither party disputes that the back-panel instructions prescribe how much ground coffee to use in two circumstances: 1 tablespoon of ground coffee to make 1 six fluid-ounce-serving or 1/2 measuring cup (8 tablespoons) to make 10 servings (hereinafter, respectively, the "1:1 ratio" and "8:10 ratio" or "Pot method"). No other brewing instructions are on the Products. Defendants counter that reliance on the 1:1 ratio is unreasonable because the instructions also include the Pot method, which "makes a pot of ten servings by using 60 fl oz of water and a ½ measuring cup (8 tablespoons) [of coffee.]" Mot. at 2. According to Defendants, "the Pot method shows that as more water is added, the fewer tablespoons of coffee are required to brew Defendants' suggested strength servings." *Id*. at 11. This argument fails for at least two reasons.

First, while there are only two sets of brewing methods provided to consumers on the Products' labeling, it is ***impossible*** for either method to provide the number of cups stated on the front label. Thus, ***even if*** the Court were to solely consider the 8:10 ratio (it should not), dismissal would be unwarranted because the Serving Representation would ***still be false***. In other words, when applying the 8:10 ratio, none of the Products can make close to the Serving Representation. For example, the 24.2 oz. French

---

[17] *See also In re Domestic Airline Travel Antitrust Litig*., 221 F. Supp. 3d 46, 69 (D.D.C. 2016) (denying motion to dismiss despite "[d]efendants [having] provide[d] alternative explanations for [its conduct]" because "at this stage of the litigation … the Court shall not weigh Plaintiffs' reasonable interpretation of these factual allegations against Defendants' alternative interpretation."); *Lytle v. Nutramax Labs., Inc.*, No. EDCV 19-835 JGB (SPx), 2019 WL 8060077, at *4 (C.D. Cal. Dec. 6, 2019) (when confronted with a dispute between the meaning of two studies on which the plaintiffs' claims relied, explaining "[t]o overcome the evidentiary presumptions the Court must make in favor of Plaintiffs, Defendants must do more than suggest another reasonable—or even a better—interpretation of the studies. They must demonstrate that the interpretation advanced in the SAC is inaccurate or unreasonable.").

Roast canister states it can make up to 210 cups, but following the 8:10 ratio would only provide 81.6% of the cups stated on the Serving Representation.[18] This is 38.5 cups fewer than what is represented. This same math and shortage applies to all the Products, which, on average, contain only 85.39% of the Serving Representation under most generous standard advanced by Defendants. This is a material shortfall.

Second, to the extent Defendants argue that consumers can use *even less* ground coffee to make the Products' Serving Representation, this not only defies common sense, but is also a factual inquiry not appropriate for resolution on a motion to dismiss. *Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 WL 659014 (C.D. Cal. Feb. 16, 2017) (denying motion to dismiss despite presence of most-diluted instruction which would yield the represented "up to" number of gallons, and holding that whether the labels are likely to deceive a reasonable consumer is more appropriately resolved on motion for summary judgment or motion for class certification). More specific to the issue here, the *Arthur* court explained that reasonable consumers are likely to be deceived when presented with two possible mixing instructions because they would be forced to guess which option to follow:

> Although these instructions are not hidden or abnormally small, they fail to explicitly state which option produces the "makes up to" advertisement on the front label of the Concentrate bottle. Consequently, it appears that the three mixing options could result in confusion, as consumers would need to either calculate the ready-to-use quantities of all mixing options or guess which mixing option creates the "makes up to" amount provided on the front label.

2018 WL 1472500, at *7. Indeed, whether reasonable consumers follow the 1:1 ratio or the 8:10 ratio can and should be fleshed out through discovery. *See, e.g.*, *Lytle*, 2019 WL 8060077, at *4 ("Defendants raise

---

[18] According to Defendants' instructions, the Pot Method would require half a measuring cup (i.e., 8 tablespoons) of ground coffee to make one pot of brewed coffee (i.e., 10 cups/servings of coffee). Thus, to make 210 cups of coffee (as promised), a consumer would need to make 21 pots under this method. Thus, multiplying the number of pots by the number of tablespoons required to make a pot (i.e., 21 pots x 8 tablespoons), a customer would need to use 168 tablespoons of coffee to make the 210 cups promised. Because one tablespoon of coffee weighs 5 grams, 840 grams of ground coffee is needed to make 21 pots, or 210 cups, of coffee. However, the 24.2oz container has a net weight of only 686 grams. Thus, this canister is missing 18.4% of the ground coffee needed to make 21 pots, or 210 cups, of coffee (686/840).

arguments regarding the reliability, methodology, and appropriate extrapolation of the study—but these are not the type of questions the Court resolves at the pleading stage.").

Further, underlying factual issues here could also become relevant. For example, Defendants' own website formerly included a webpage entitled "How to Measure Coffee Cups Calculator" that directly contradicts their position.[19] The webpage confirmed that 1 serving uniformly requires 1 tablespoon of ground coffee for "household coffee makers" and "[n]ot for use with foodservice machines." It also provided an interactive "calculator" instructing users how much ground coffee to use based on the desired number of cups. No matter how many desired cups were input, the output *always* equaled 1 tablespoon of coffee grounds per serving—e.g., if 10 cups were input, users were instructed to use 10 tablespoons of ground coffee. Additionally, in striking contrast to Defendants' assertion that "the Pot method shows that as more water is added, fewer tablespoons of coffee are required[,]" Defendants' ***current*** webpage found at https://www.folgerscoffee.com/how-to/make-coffee,[20] entitled "HOW TO MAKE COFFEE IN A COFFEE MAKER," provides the following (video-accompanied) written instructions for brewing a pot of coffee: "Add the desired amount of grounds to the filter: ***about 1 tablespoon per 5 to 6 fluid ounces of cold water for regular coffee, and 2 tablespoons per 5 to 6 fluid ounces for strong coffee***." In other words, Defendants' own website continues to betray its contention that consumers will brew the Pot method using the 8:10 ratio and instead instructs them to use at least ***1 tablespoon per 5-6 fl oz of water***— i.e., the 1:1 ratio—***even when brewing a pot of coffee***.[21]

---

[19] The "calculator" portion of the webpage was taken down following the inception of this litigation, but as of September 14, 2020, could be found at https://www.folgerscoffee.com/coffee-how-to/how-to-measure-coffee (last visited September 14, 2020).

[20] The Court can take judicial notice of Defendants' website. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("the case law applying Rule 201 states that, '[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (citation omitted).

[21] *Compare with* Mot. at 9: "Plaintiffs are incorrect that 'Defendants instruct consumers to use one tablespoon of ground coffee to make one serving (one 6 fl oz cup) of coffee.'" (citing CAC ¶ 33).

4. <u>Plaintiffs Satisfy Rule 9(b)</u>

The CAC also satisfies Rule 9(b)'s "who, what, when, where, and how" requirements which apply to all claims sounding in fraud. *See Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations only need to be "'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.*

First, Defendants blatantly misconstrue the "when", "where", and "how" prongs, asserting that "Plaintiffs' failure to allege *when* and *where* they were unable to make the cups of coffee leads to another issue under Rule 9(b): *how* do Plaintiffs know the servings cannot be attained?" Mot. at 11. But this is just a reiteration of Defendants' same flawed Article III standing argument. Rather, Defendants are well-apprised of the basis for Plaintiffs' claims, as Plaintiffs clearly allege the Serving Representation made on each Product (CAC ¶¶ 30-32), the calculations revealing the Products are incapable of making the Serving Representation (*Id.* ¶¶ 33-42), the amount of ground coffee contained in each Product (*Id.* ¶ 43), and that reasonable consumers are likely to be misled and harmed by the Serving Representation (*Id.* ¶¶ 51-53). These allegations clearly satisfy the "how" prong under Rule 9(b) and provide adequate detail to "inform the defendant of the core factual basis for the fraud claims." *Ransom v. VFS, Inc.*, 918 F.Supp.2d 888, 898 (D. Minn. 2013). Thus, as Judge Bernal recognized in *Ashton*:

> Defendants argue that Plaintiffs fail to establish the "how" prong, arguing that "Plaintiffs do not provide factual allegations to explain how they reach their flawed conclusion" beyond a mathematical equation. (Mot. at 16.) The Court disagrees. Plaintiffs allege that each Product includes serving representations (that each Product makes "up to" a set number of servings), as well as instructions to use one tablespoon of ground coffee to make one serving/cup of coffee. (FAC ¶¶ 20-34.) Plaintiffs allege that if they follow those brewing instructions, the Products contain "substantially less ground coffee than is required to make the recommended number of 'up to' servings promised on the packaging." (FAC ¶¶ 20-34.) The FAC further alleges that Plaintiffs were induced to pay substantially more for the Products based on these representations. (Id. ¶¶ 9-11.) These allegations are sufficient to establish the "how" of the fraudulent conduct, and to provide Defendants ample notice of the circumstances underlying Plaintiffs' claims against them.

*Ashton*, 2020 WL 8575140, at *9.[22]

     5.    <u>Defendants' Remaining Challenges to the Consumer Protection Claims Fail</u>

**i.     The California Claims Are Adequately Pleaded**

Defendants asserts that the "CLRA claim is deficient" because Plaintiffs did not "sufficiently allege that a defendant was aware of [the] defect at the time of the sale[.]" Mot. at 17 (citing *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1145 (9th Cir. 2012)). Defendants are incorrect because Plaintiffs are not alleging a product defect here. Indeed, the case cited by Defendant, *Wilson*, involved allegations that HP "concealed a design defect in its Pavilion Notebook computers." 668 F.3d at 1138. There is no such allegation here. CLRA claims which are not based on a product defect do not have a scienter requirement. *See e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("[T]he California laws at issue here", including the CLRA, "have no scienter requirement.").

Next, Defendants contend that Plaintiffs have failed to "establish reliance and show that a reasonable person would attach import[ant] to the misrepresentation[.]" Mot. at 18 (quotations omitted). To the extent Defendant is suggesting that Plaintiffs need to ***establish*** or ***prove*** reliance and materiality at this stage, that is not the appropriate inquiry on a motion to dismiss. At this stage, the Court must address whether Plaintiffs have adequately ***alleged*** those elements (to the extent they are elements). They have. Plaintiffs (except for Fahey) adequately allege that they relied on the Serving Representations in purchasing the Products and would not have purchased them, or would have paid significantly less for them, had they known the truth about them. *See* CAC ¶¶ 9-18; *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1113 (N.D. Cal. 2015) ("it appears they have alleged materiality by alleging that had they been aware of the installation and functionality of the Carrier IQ Software, they would not have purchased their mobile devices"). In any event, like deception, "materiality is generally a

---

[22] The CAC's allegations plainly satisfy the other Rule 9(b) requirements, as Plaintiffs allege: (1) ***the who***: Defendants misrepresented the Products, CAC ¶¶ 25-26, (2) ***the what***: the deceptive Serving Representation, CAC ¶¶ 27-44. (3) ***the when***: the purchases were made primarily during 2019 and 2020, CAC ¶¶ 9-19, and (4) ***the where***: the purchases were made at specific retailers, CAC ¶¶ 9-19.

question of fact for the jury." *Johnson v. Gen. Mills, Inc*., 275 F.R.D. 282, 287 (C.D. Cal. 2011)

Finally, contrary to Defendants' argument, Plaintiffs' easily satisfy the balancing test under the UCL's "unfair" prong by alleging, *inter alia*, that Defendants' conduct is of no benefit to consumers as it is misleading, unfair, unlawful, and is injurious. CAC ¶ 127. Judge Bernal has already concluded these allegations were sufficient. *Ashton*, 2020 WL 8575140, at *10.

### ii. The Court Has Jurisdiction Over Plaintiff Schoener's Claims

Defendants argue that there is no personal jurisdiction over Defendants for Plaintiff Schoener's New York claims. Mot. at 20. Defendants also assert, without authority, that Eighth Circuit law controls. *Id.* But Defendants earlier provided authority to the contrary—that "personal jurisdiction of a transferee court in an MDL is co-extensive with the personal jurisdiction of the transferor courts." Mot. at 7 (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 486 (J.P.M.L. 1968)). Thus, this Court should look to whether the transferor court (C.D. Cal.) had jurisdiction over Plaintiff Schoener.

There, Judge Bernal already ruled that the *Ashton* court could properly exercise pendent personal jurisdiction over Plaintiff Schoener's claims. *Ashton*, 2020 WL 8575140, at *8; *see also In re Takata Airbag Prod. Liab. Litig*., 396 F. Supp. 3d 1101, 1136–37 (S.D. Fla. 2019) (holding that *Bristol-Myers* does not preclude the transferor court from applying pendent personal jurisdiction over non-resident plaintiffs). Thus, this Court's jurisdiction is co-extensive with the jurisdiction of the *Ashton* court. *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 486 (J.P.M.L. 1968). Further, there is no good cause to overrule Judge Bernal's decision. Defendants do not dispute that this Court has jurisdiction over Plaintiffs Ashton and Ibarra. Nor can they dispute that Plaintiff Schoener's claims arise out of the same nucleus of operative facts. The claims are sufficiently factually-related that a plaintiff "'would ordinarily be expected to try them all in one judicial proceeding.'" *Rep. of the Phil. v. Marcos*, 862 F. 2d 1355, 1359 (9th Cir. 1988) (citation omitted). The alternative—dismissal of Schoener's claims on jurisdictional grounds— would result in Schoener's claims either being refiled directly into this forum or in New York, whereupon they would be transferred to this forum. Thus, retaining jurisdiction here advances judicial economy.

Lastly, Defendants contend that Plaintiff Schoener failed to allege the misrepresentations were material to him. However, as discussed above, all Plaintiffs (except for Fahey) have adequately alleged materiality and reliance. *See* Section IV.C.5.i; CAC ¶ 10. In any event, materiality is not an element of GBL claims. *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) ("[r]equiring that Plaintiff establish Defendant's statements as a material factor in his own purchasing decision would improperly apply a reliance element to Plaintiff's GBL claims.").

### iii. Plaintiff Mawby Adequately Pleads an MMPA Claim

Under the "benefit of the bargain" rule as applied to MMPA claims, "Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss." *Thornton*, 2016 WL 4073713, at *3. Contrary to Defendants' claim, Mawby sufficiently alleges ascertainable loss because she "reasonably believed that the representations on the Products' packaging was accurate and would have paid significantly less for the Products had she known that the Products did not contain enough ground coffee to make the represented number of cups of coffee." CAC ¶¶ 17, 75; *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016) ("Here, because Murphy alleged the mix was worth less than the product as represented, he stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule.").

Defendants proffer no Missouri law—because none exists—requiring Plaintiff Mawby to allege "how much less" she would have paid for the Products had they been accurately labeled, or how much other products cost. Mot. at 16; *see Thornton,* 2016 WL 4073713, at *3–4 (rejecting identical argument that plaintiff was required to "allege how much more she paid, how to calculate the price premium, what the actual value of the [product] is, or what the value of the [product] would have been if had been as represented" because "[i]t is not for the Court to determine on a motion to dismiss precisely what damages, if any, Plaintiff may be entitled to."). Moreover, Mawby's allegations are not based on a "subjective belief that the math does not add up," as Defendants characterize, but on the mathematically verifiable, objective fact that the Products, including those she purchased, uniformly fail to meet the

23

Serving Representation. CAC ¶¶ 17, 30-44. These allegations suffice under the MMPA because they establish "an economic injury based on an objective characteristic" *SI03 Inc. v. Musclegen Rsch., Inc.*, No. 1:16-CV-274 RLW, 2020 WL 2468412, at *5 (E.D. Mo. May 13, 2020).

*State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. 2008) is easily distinguishable. That case was a decision made at class certification where the court made a detailed factual determination on materiality based on an extensive factual record developed through discovery. *See also id.* (reversing certification because class was class impermissibly overbroad where "*eighty percent* of the putative class suffered no injury" because they "did not care if the Diet Coke they purchased contained saccharin.") (emphasis added). In contrast, no extensive factual record is available here and, in any event, this case is not based on subjective preferences, but on an objective and verifiable misrepresentation to all consumers about the amount of ground coffee contained in Defendants' Products. *See, e.g., Hope v. Nissan N.A., Inc.*, 353 S.W.3d 68, 80 (Mo. Ct. App. 2011) (likewise distinguishing *Coca-Cola*, "where the basis of the injury was a subjective consumer preference," from a case where the alleged injury is a diminished economic value of the product received by every purchaser, even if the purchaser was unaware of it).

Lastly, Defendants contend that Mawby has not alleged materiality. This is incorrect for the reasons outlined above. Regardless, "[m]ateriality is a question of fact to be determined by the fact-finder." *Carnahan v. Am. Family Mut. Ins. Co.*, 723 S.W.2d 612, 615 (Mo. Ct. App. 1987).

### iv. Plaintiff Moser Adequately Pleads an ICFA and DTPA Claims

Defendants also argue Moser does not satisfy the actual damages element of the ICFA for lack of an "actual pecuniary loss." Mot. at 23. Yet Moser clearly alleges she did not receive the benefit of the bargain because she "would have paid significantly less for the Products, or would not have purchased them at all, had [she] known that the Products contain substantially less ground coffee than needed to make the promised number of servings." CAC ¶ 174. *See, e.g., Lipton v. Chattem,* No. 11 C 2952, 2012 WL 1192083, at *4–5 (N.D. Ill. Apr.10, 2012) (denying motion to dismiss for failure to allege

24

loss under the ICFA where the plaintiff alleged that she would not have purchased product but for the alleged misrepresentations); *Hobbs v. Gerber Prods. Co.*, No. 17 CV 3534, 2018 WL 3861571, at *9 (N.D. Ill. Aug. 14, 2018) (same).

*Camasta v. Jos. A Bank Clothiers, Inc.*, is a distinguishable false discount pricing case whose ruling on damages is explicitly limited to that context. No. 12 C 7782, 2013 WL 474509, at *5 (N.D. Ill. Feb. 7, 2013) (noting the two false pricing appellate decisions on which the decision is based—*Mulligan* and *Carter's Inc.*— "specifically rejected Camasta's argument that a customer experiences actual damage when he does not receive as much of a discount as expected based on the defendant retailer's representations."). Instead, "like the plaintiffs in *Mulligan* and *Carter's Inc.* Camasta does not allege that he paid an unfair price or more than the value of the shirts." *Id.* at *4. *Camasta* is therefore clearly limited to false pricing cases (where damages have been notoriously vexing) and does not extend here, where Moser alleges facts showing the value of what she received was less than what was represented: Defendants' Products contain an average shortfall of 31.71% (CAC ¶ 44) and, specifically, the Folgers Classic Roast, 30.5 oz. Product Moser purchased was short 28%. CAC ¶¶ 13, 43. These allegations are sufficient.

As for her DTPA claim, Moser sufficiently alleges likelihood of future harm for the same reasons expressed in Section IV.A.3. *See* CAC ¶¶ 23-24. *See Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 9 (Ill. App. Ct. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future.") (citation omitted). Indeed, similar allegations of future harm were found sufficient in *Ashton. See Ashton*, 2020 WL 8575140, at *7.

### v. Plaintiff Marthaller Adequately Pleads a WCPA Claim

Defendants argue Marthaller's WCPA claim fails because the CAC contains no allegation regarding "public interest impact." Mot. at 24–25. Not so. "An act or practice affects the 'public interest impact', when (1) it is part of a pattern or generalized course of conduct, and (2) there is a

real and substantial potential for repetition of defendant's conduct after the act involving plaintiff." *Eifler v. Shurgard Cap. Mgmt. Corp.*, 71 Wash. App. 684, 697 (Wash. Ct. App. 1993) (citation omitted). There is no question here that Defendants have engaged in a pattern of generalized conduct—all the Products sold in Washington state contain the misleading misrepresentations and a shortfall in ground coffee. This conduct impacts all purchasers of the Products and there is a real and substantial potential for repetition of Defendants' conduct as Defendants have not ceased the false advertising. *See Eifler*, 71 Wash. App. at 697; *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 228 P.3d 1260, 1270 (Wash. 2010) (conduct must have the capacity to deceive a substantial portion of the public). Thus, the public interest element is satisfied.

### vi.  Plaintiffs Sorin and Smith Adequately Plead FDUTPA Claims

As an initial matter, Defendants urge the Court to adopt the court's decision in *Sorin* as to Plaintiff Sorin's FDUTPA claim. Mot. at 21-22. While the Court has discretion to not "disturb this holding," as Defendants plead, Plaintiffs respectfully request that the Court adopt and apply the same reasoning and conclusions as those in *Ashton* to Plaintiff Sorin.[23] The decision in *Ashton* contains far more thorough analysis and is more consistent with jurisprudence across the country, including in Florida, which has refused to dismiss consumer false advertising claims unless they are patently implausible. *S. Broward Hosp. Dist.*, 2020 WL 7074645, at *4 ("whether a practice is 'deceptive or unfair' [under the FDUTPA] is determined by an objective analysis, and ordinarily is a question of fact for the jury to determine."); *Calderon v. Sixt Rent a Car, LLC*, No. 19-cv-62408-SINGHAL, 2020 WL 700381, at *7 (S.D. Fla. Feb. 12, 2020), *aff'd*, 5 F.4th 1204 (11th Cir. 2021) (same). Indeed, "[a] federal trial judge, with a background and experience unlike that of most consumers, is

---

[23] Defendants contend that the court in *Ashton* "punted the issue" (Mot. at 22) but this gives short shrift to Judge Bernal's rigorous analysis. Judge Bernal did not "punt" on the issue – rather he directly tackled the question at hand: whether plaintiffs ***plausibly*** alleged that reasonable consumers are likely to be misled by the Servings Representations. On this issue, Judge Bernal correctly held the answer was "yes."

hardly in a position to declare" that consumers could not be plausibly deceived, as declared by the court in *Sorin*. *Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451 (KMK), _F.Supp.3d_, 2021 WL 3501203, at *11 (S.D.N.Y. Aug. 9, 2021). As such, the Court should adopt the reasoning and conclusions in *Ashton* as to Plaintiff Sorin as well.

Defendants' remaining arguments can be disposed with ease. Defendants contend that Sorin and Smith did not allege the misrepresentations were "*materially* misleading." Mot. at 22. For the reasons outlined above, Plaintiffs (except Fahey) have all adequately alleged materiality. Defendants also argue that Plaintiffs' damages and causation for the damages are speculative. Mot. at 22-23. However, as outlined above, Plaintiffs' theory of harm is based on a mathematically verifiable, objective fact that the Products uniformly fail to meet the Serving Representation. Indeed, even the decision in *Sorin* correctly held that Plaintiff Sorin's theory of harm was not speculative: "Sorin has pled that she received less of the product than what she was led to believe; she has adequately pled damages" and "[h]er expert need not have tested the exact canisters that she bought." *Sorin v. The Folger Coffee Co.*, No. 9:20-cv-80897, ECF No. 36 p. 2,4 (S.D. Fla. June 4, 2020).

### vii.        Plaintiff Fahey Adequately Pleads His CPPA Claims

Defendants argue that Plaintiff Fahey's claim for injunctive relief under CPPA should be dismissed because he does not allege a risk of continuing harming. Mot. at 21. As such, Defendant argues that Plaintiff Fahey lacks standing. *Id*. However, Plaintiff Fahey has standing to bring such claims for relief under his unique status as "representative plaintiff" (i.e., tester plaintiff) under the CPPA. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (finding that tester plaintiffs had standing even where plaintiffs may have acted fully expecting to receive false information, and had no intention of making a purchase); *see also Grayson v. AT & T Corp.*, 15 A.3d 219, 248 (D.C. 2011) ("'[I]t is well established that '[t]he actual or *threatened injury* required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'") (emphasis added) (citation omitted). As to Defendants' argument regarding materiality, it falls flat because the

27

CAC clearly contains allegations, for all Plaintiffs, regarding materiality. ¶¶ 4, 45-53.

### D. Plaintiffs Adequately Plead Breach of Warranty Claims

#### 1. <u>Breach of Express Warranty</u>

Plaintiffs sufficiently allege breach of express warranty: (1) the Serving Representation on each Product is an affirmation of fact that the Product can indeed make that many promised 6 oz cups; (2) Plaintiffs relied on the representations in purchasing the Products, which were part of the bases of their bargains; and (3) Defendants breached these warranties by selling the Products with substantially less ground coffee than required to make the promised number of servings. CAC ¶¶ 82-89; *see Ashton*, 2020 WL 8575140, at *11 ("the Court finds that these allegations are sufficient to meet the elements of a breach of express warranty claim"); *Martin*, 2017 WL 659014, at *1, 5 (denying motion to dismiss breach of express warranty claim where plaintiff alleged that, when users follow the back-panel instructions, Roundup Concentrates only made about half of the amount represented on the front label).

As an initial matter, Defendants argue that Fahey's express warranty claim should be dismissed the extent it seeks to represent a class of individuals, because Fahey alleged that "he is not seeking to represent a Class." Mot. at 26. Defendant misconstrues the CAC. Fahey brings this claim individually and on behalf of his "State Subclass," which is defined in the CAC as the D.C. General Public. As such, Fahey seeks to represent the D.C. General Public with this claim, not a D.C. class of individuals. Defendant advances no argument as to why the claim, brought on behalf of the D.C. General Public, should be dismissed, but rather appears to take issue with use of the term "State Subclass" in this context.

Defendants next contend the remaining Plaintiffs' express warranty claims fail because they ignore the alternative 8:10 method of brewing the coffee. Mot. at 26. However as outlined *supra*, even using the 8:10 method yields a significant shortfall in ground coffee (and is thus false) and, in any event, how consumers brew their coffee is a question of fact. *See Ashton*, 2020 WL 8575140, at *11 ("to the extent that the parties disagree on the proper interpretation of the serving representations and whether they constitute an affirmation of fact, that is a question of fact that is premature at the pleading stage.").

28

Lastly, Defendants argue that the Texas, Illinois, Florida, and Washington express warranty claims fail because Plaintiffs did not provide pre-suit notice. However, Florida and Washington do not require pre-suit notice here because Defendant is the manufacturer, not the immediate seller. *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020) ("based on the plain language of the statute alone" the pre-suit requirement under Florida law does not apply to manufacturers); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, No. 3:12-cv-1366-HES-JBT, 2014 WL 12640371, at *3–4 (M.D. Fla. Aug. 14, 2014) (same); *Danielkiewicz v. Whirlpool Corp.*, 426 F. Supp. 3d 426, 435 (E.D. Mich. 2019) (under Washington warranty law, pre-suit notice not required when buyer is the "downstream purchaser").

Defendants also cannot credibly assert that they were ***not*** on notice of Plaintiffs' allegations or that they were somehow prejudiced by lack of notice. Indeed, on May 5, 2020, Plaintiff Ibarra sent notice of his claims to The Folger Coffee Company. CAC ¶ 114; *see also* Declaration of Benjamin Heikali ¶ 3, Ex. A. On May 7, Plaintiffs Ashton and Schoener sent a similar notice letter to J.M. Smucker Company. *Id.* ¶ 4, Ex. B. Both notice letters were sent on behalf of the individual Plaintiffs and all similarly situated consumers. Moreover, the May 7 letter noticed J.M. Smucker of breach of warranty laws, including under various state laws. *Id.*

### 2. Breach of Implied Warranty

Apart from arguing in conclusory fashion that the Plaintiffs' implied warranty claims "rise and fall" with the express warranty claims, Defendants present two additional arguments, both of which can be dispelled with ease. First, as to Plaintiff Thomson's claim under Texas law, Defendants again argue lack of pre-suit notice. Mot. at 27. However, as discussed in Section IV.D.1 *supra*, Defendant was well aware of its breach of warranty, through the various letters and lawsuits it was served with, yet has decided not to cure the breach. Second, Defendants contend that California Plaintiffs lack privity with Defendants to bring an implied warranty claim. However, this exact issue was decided in Plaintiffs' favor by Judge Bernal in *Ashton*. 2020 WL 8575140, at *12 ("California and New York recognize two exceptions to the

privity rule for third party beneficiaries and for claims related to food.") Thus, Judge Bernal concluded, "because the Products are foodstuffs meant for human consumption, Plaintiffs are further exempt from the privity requirement." *Id*. There is no reason this Court should deviate from this conclusion.

### E. Plaintiffs Adequately Plead Common Law Claims

#### 1. Common Law Fraud and Negligent Misrepresentation Claims

Defendants contend Plaintiffs' common law fraud and negligent misrepresentation claims fail because "Plaintiffs do not plead an actionable misrepresentation[.]" Mot. at 28. Not so. As outlined above, the Serving Representation is a material misrepresentation because the Products cannot make the promised number of servings "pursuant to the instructions on the label." *Ashton*, 2020 WL 8575140, at *12 (denying motion to dismiss intentional and negligent misrepresentation claims, holding that Plaintiffs had adequately pled a misrepresentation regarding number of servings). Defendants also argue that Plaintiffs failed to allege knowledge or intent to support a claim for fraud. Mot. at 28. But Defendants fail to carry their burden, as the moving party, to demonstrate *why* or *how* the allegations are insufficient to demonstrate intent or knowledge. Indeed, Plaintiffs allege, "Defendants knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth." CAC ¶ 198. As Judge Bernal held, "because Plaintiffs cannot be expected to plead Defendants' state of mind … [t]hese allegations are sufficient to show fraudulent intent." *Ashton*, 2020 WL 8575140, at *12.

Defendants also argue the negligent misrepresentation claims fail because the parties do not have a business relationship. Mot. at 28. However, Defendants provide no explanation as to why a retail transaction does not constitute a business transaction or relationship for the purposes of a negligent misrepresentation claim. Regardless, in at least California, Florida, Missouri, Washington, and Texas, the business transaction element is either not required or an applicable exception to the element (e.g., when the defendant knows a third party will rely on information) exists. *See, e.g., Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 471 (S.D.N.Y. 2020) (holding that California does not require a "special relationship" with "respect to negligent misrepresentation"); *Correct Rx Pharmacy Servs., Inc. v.*

30

*Cornerstone Automation Sys.*, LLC, No. 3:15-CV-3006-N, 2018 WL 4680568, at *2 n.5 (N.D. Tex. Sept. 28, 2018) ("this Court respectfully believes the suggestion of a limitation of a claim for negligent misrepresentation to special relationships ... is wrong"); *Lovell v. P.F. Chang's China Bistro, Inc*., No. C14-1152RSL, 2015 WL 4940371, at *7 n.5 (W.D. Wash. Mar. 27, 2015) ("The Court sees no reason to exclude [the purchase a good or service from a third party] from the definition of 'business transaction' when evaluating a negligent misrepresentation claim"); *Torp v. Gen. Motors Acceptance Corp.*, No. 05-1042-CV-W-HFS, 2007 WL 2811437, at *9 (W.D. Mo. Sept. 24, 2007) (holding that defendant's "repeated argument that a lack of direct communication with plaintiffs somehow protects it from liability is unavailing. For strict privity of contract is not essential to a negligent misrepresentation claim when the defendant knows that a third party is relying on a particular business transaction."); *Chandler v. Van Dyke Farm Homeowners*, No. 01-5835, 2003 WL 21639021, at *4 (Fla. Cir. Ct. June 4, 2003) ("[W]e therefore hold that a business transaction is not required to sustain a cause of action for negligent misrepresentation.")

Defendants separately argue that the fraud and negligent misrepresentation claims are barred by the economic loss doctrine ("ELD"). As an initial matter, Judge Bernal already held that Plaintiffs Ibarra and Ashton's California negligent misrepresentation claims are ***not*** barred by the ELD because "California law classifies negligent misrepresentation as a species of fraud ... for which economic loss is recoverable." *Ashton*, 2020 WL 8575140, at *13 (citing California Supreme Court decision in *Robinson Helicopter Co., Inc. v. Dana Corp*., 34 Cal. 4th 979 (2004)). The same reasoning should extend here. Defendants' insistence that Judge Bernal's decision was "out of step with the majority of courts in California" and "recent decisions" is not only incorrect (*see Whittington v. KidsEmbrace, LLC*, No. CV 21-1830-JFW(JPRX), 2021 WL 3076646, at *6 (C.D. Cal. July 19, 2021) ("the Court concludes that the rule does not apply to Plaintiff's fraud [and] negligent misrepresentation" claims)), but it is inconsistent with the principle that this Court must adhere to California state law on substantive issues. *See Curtis Lumber Co.,*

*Inc. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) ("[w]e are bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law."); *Cty. of Orange v. Tata Consultancy Servs. Ltd.*, No. SACV 13-00683-JLS (JCx), 2016 WL 6542728, at *7 (C.D. Cal. Apr. 1, 2016) ("the California Supreme Court has repeatedly affirmed that the economic loss doctrine is not a bar to properly pled claims for fraudulent inducement.")

The Missouri Supreme Court has yet to decide whether the ELD doctrine would bar a misrepresentation claim. In the absence of such authority, the Court "must predict what rule the [Supreme] court would adopt." *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014). Defendant cites to the Eighth Circuit's ruling in *Dannix Painting, LLC v. Sherwin-Williams Co.,* 732 F.3d 902, 905 (8th Cir. 2013), but the Eighth Circuit's most recent decision in *Dunne v. Res. Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021) is controlling. In *Dunne*, the Eighth Circuit, predicting how the Missouri Supreme Court would rule, held that the ELD did not apply in a fraudulent misrepresentation case outside the UCC context. *Id.*; *see also Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 774 (8th Cir. 2020) ("Missouri law...expressly limits [the economic loss] doctrine to warranty and negligence or strict liability claims"). Here, Plaintiff Mawby's fraud and negligent misrepresentation claims under Missouri law are not based in the UCC. Thus, the ELD does not bar her claims.

The same is the case under Florida, Washington, and Texas. Under binding Florida law, the ELD is only a defense in product liability context, which is clearly not the case here. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.,* 110 So. 3d 399, 407 (Fla. 2013) (defining the "product liability context" as "cases involving a product which damages itself by reason of a defect in the product."); *Miller v. Samsung Elecs. Am., Inc.*, No. CIV.A. 14-4076, 2015 WL 3965608, at *10 (D.N.J. June 29, 2015) (applying *Tiara* and holding that claims based on false advertising regarding a feature of a product are "outside of the product liability context" and therefore not barred by the ELD). Under Washington Supreme Court precedent, the economic loss rule, also known as the "independent duty rule," does

not bar claims for negligent misrepresentation. *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash.2d 380 (Wash. 2010). Lastly, "[u]nder Texas law, the economic loss doctrine does not bar recovery on [negligent misrepresentation and fraud] claims." *Cotton Patch Cafe, Inc. v. Micros Sys., Inc.*, No. CIV.A. MJG-09-3242, 2012 WL 5986773, at \*5 (D. Md. Nov. 27, 2012) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418–19 (Tex. 2011)).[24]

### 2.   Plaintiffs' Unjust Enrichment Claim/ Quasi Contract Claim Survives

Defendants contend that Plaintiffs' (except Fahey) unjust enrichment claim should be dismissed because it merely duplicates Plaintiffs' other claims. Mot. at 31. Defendants' argument is inconsistent with Fed. R. Civ. P. 8 and well-established case law providing that unjust enrichment claims may be pled in the alternative. Under Rule 8, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (under Rule 8(d)(2), "duplicative" or "superfluous" claims are "not grounds for dismissal.") For this reason, courts across the country, including this very Court and Judge Bernal in *Ashton*, have concluded that a plaintiff may plead an unjust enrichment claim in the alternative. *See Jones,* 2019 WL 9656365, at \*4 (Phillips, J.) (denying motion to dismiss unjust enrichment claim, even when plaintiffs may have an adequate remedy at law, because a plaintiff may "assert alternative claims until it is determined whether they have an adequate remedy at law."); *Ashton,* 2020 WL 8575140, at \*13 ("[T]he Court concludes that Plaintiffs have [properly] pleaded their contract and unjust enrichment claims in the alternative"); *see also Browning*, 2021 WL 1940645, at \*6 (same); *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) (same); *Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL

---

[24] Moreover, the economic loss doctrine does not preclude the New York and Illinois common law fraud claims. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) ("Plaintiffs' fraud claims, however, are not barred by the economic loss doctrine."); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568–69 (7th Cir. 2012) (holding that Illinois courts recognize an exception to the economic loss doctrine for claims alleging fraudulent misrepresentation).

4572799, at *16 (S.D. Tex. Sept. 20, 2019) (same); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig*., No. 9 CV 3690, 2015 WL 3988488, at *36 (N.D. Ill. June 29, 2015) (same); *Scott v. Carr*, No. C20-0236-RSM, 2020 WL 6381812, at *4 (W.D. Wash. Oct. 30, 2020) (same); *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1325–26 (M.D. Fla. 2018) (same). Accordingly, the Court should not dismiss Plaintiffs' unjust enrichment claim.

### F.    The Nationwide Class Allegations Should Not Be Stricken

Defendants argue the Court should strike Plaintiffs' common law claims to the extent they are brought on behalf of a nationwide class. Mot. at 32. Defendants contend that applying each state's laws to a nationwide class would make a nationwide class unmanageable. However, Judge Bernal addressed this exact argument in *Ashton* and held that such "detailed [choice-of-law] analysis is not appropriate at this stage" and "defer[red] this fact-intensive inquiry to the class certification stage." 2020 WL 8575140, at *15-16. Still, Judge Bernal found Defendants' charts summarizing "each state law's provisions regarding such elements as scienter, reliance, remedies, and defenses" to be unpersuasive for failure to apply the chart to the facts of this case.[25] *Id.*; *see also Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (To meet its burden in demonstrating that California law cannot be applied nationwide, Defendants must engage in an "analytically rigorous discussion . . . based on the facts and circumstances of *this* case, and *this* Plaintiff's allegations.") Indeed, Judge Bernal held that such an analysis "may be fact-intensive, and therefore inappropriate at the pleading stage." *Ashton*, 2020 WL 8575140, at *15; *see, e.g., Jones*, 2019 WL 9656365, at *9 (refusing to dismiss nationwide class allegations where this Court did not have the "benefit of the parties' analysis of Rule 23.")). Plaintiffs urge the Court to apply the reasoning in *Ashton* and *Jones* here, and defer such determination until class certification, after a factual record has been developed.

Finally, Defendants' choice-of-law analysis is woefully inadequate because Defendants fail

---

[25] Those charts bear striking resemblance to the charts here. *Compare* ECF No. 76-3, 76-4 (Defs' Exs. B-C) *with Ashton*, 5:20-cv-00992-JGB-SHK, ECF No. 36-1, pp. 5-69 (Suber Decl., Exs. 2-3).

to demonstrate how or why any purported differences in law are ***material to this case***. Nowhere do Defendants discuss the facts of this case or even attempt to explain how, under the differing laws of each state, these facts may lead to material differences in outcome. *Jones*, 2019 WL 9656365, at *9 ("Defendant has provided only an anecdotal account of other court decisions and has not conducted a Rule 23 analysis specific to *this* case."); *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 WL 4490860, at *3–4 (C.D. Cal. Sept. 28, 2012) ("The chart summarizes each law's provisions regarding such elements as scienter, reliance, and timeliness, as well as remedies and defenses . . . [N]owhere does [defendant] apply the facts of this case to those laws or attempt to demonstrate, beyond citation to *Mazza*, that a true conflict exists."). It is also not sufficient to simply cite to case law demonstrating differences in state law. *Jones*, 2019 WL 9656365, at *9 (finding citations to "several decisions discussing the legal difficulties" insufficient to defeat a nationwide class). As such, Defendants have failed to carry their burden to dismiss or strike Plaintiffs' nationwide claims.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Court deny Defendants' Motion. Alternatively, if the Court is inclined to grant any part of the Motion, Plaintiffs respectfully request leave to amend pursuant to Rule 15(a).

Dated: November 17, 2021                    Respectfully submitted,


By: */s/Tim E. Dollar*
    Tim E. Dollar

Tim E. Dollar, Missouri Bar No. 33123
**DOLLAR, BURNS, BECKER &
HERSHEWE, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tel: (816) 876-2600
Fax: (816) 221-8763
Email: timd@dollar-law.com

35

Todd D. Carpenter (*pro hac vice*)
Scott G. Braden (*pro hac vice*)
Katrina Carroll *(pro hac vice)*
**CARLSON LYNCH, LLP**
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.: 619-762-1900
Fax: 619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com
kcarroll@carlsonlynch.com


Lubna M. Faruqi (*pro hac vice*)
Timothy J. Peter (*pro hac vice*)
Nina M. Varindani (*pro hac vice*)
Benjamin Heikali (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
lfaruqi@faruqilaw.com
tpeter@faruqilaw.com
nvarindani@faruqilaw.com
bheikali@faruqilaw.com


Bonner C. Walsh (*pro hac vice*)
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com


*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2021 a true and correct copy of the foregoing was electronically filed. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

By: */s/Tim E. Dollar*
Tim E. Dollar, Missouri Bar No. 33123