**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

|  |  |
|---|---|
| IN RE: FOLGERS COFFEE MARKETING LITIGATION | Civil Action No.: 21-2984-MD-C-BP<br><br>**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COME NOW**, Plaintiffs Shelly Ashton, Jay Schoener, Ramon Ibarra, Ellen Moser, Geoff Thomson, Julie Marthaller, Frederick Tan, Marcia Sorin, Sharel Mawby, Rodger Smith, A. Kevin Fahey, Mark Smith, Deborah Bosso, and Kimberley Clark ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint against Defendants The J. M. Smucker Company and The Folger Coffee Company (collectively, "Defendants"), based on Defendants' false and deceptive labeling and advertising of their Folgers ground coffee products (hereinafter collectively referred to as the "Products").[1] Plaintiffs make the following allegations based on the investigation of their counsel and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge.

## INTRODUCTION

1. This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendants have grossly misrepresented the number of cups of coffee that the Products can make.

2. Throughout the statute of limitations period, Defendants have sold the Products to consumers based on the representation that they contain enough ground coffee to make up to a specific number of servings (e.g., "240 6 fl oz cups"). However, by following Defendants' own definitions and instructions, the Products do not contain enough ground coffee to make the number of servings represented or even close to it.

3. Indeed, it is a classic and unlawful bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing.

4. Plaintiffs and other consumers purchased the Products because they reasonably

---

[1] "Products" are further defined *infra* in Paragraphs 30-31.

believed – based on Defendants' representations – that these Products contained enough coffee to make the specified number of servings. Had Plaintiffs and other consumers known the truth (i.e., that the Products do not contain enough coffee to make the specified number of servings), they would have paid less for them, or would not have purchased them at all. As a result, Plaintiffs and other consumers have been deceived and have suffered economic injury.

5.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendants' falsely and deceptively labeled Products during the statute of limitations period.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class[2] members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendants are citizens of a state different from at least some members of the proposed Classes, including Plaintiffs.

7.      This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in Missouri, or otherwise intentionally avail themselves of the markets within Missouri, through their sale of the Products in Missouri and to Missouri consumers. Additionally, this Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1407.

8.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Mawby's claims occurred in this District. Plaintiff Mawby resides in this District and purchased the Products in this District. Moreover, venue is proper in this District pursuant to 28 U.S.C. § 1407 and the Transfer Order

---

[2] The various "Classes" are defined *infra* in Paragraph 54.

issued by the United States Judicial Panel on Multidistrict Litigation, centralizing and transferring the actions to this District. *See In re Folgers Coffee Mktg. & Sales Practices. Litig.,* No. MDL 2984, 2021 WL 1221500, at *2 (U.S. Jud. Pan. Mult. Lit. Apr. 1, 2021).

## PARTIES

9.      Plaintiff Shelly Ashton is a citizen of the United States and the State of California and she currently resides in Riverside County. In April 2020, Plaintiff Ashton purchased the Folgers Classic Roast, 30.5 oz. product and the Folgers Black Silk, 24.2 oz. product from a Stater Bros. market in Beaumont, California, for her own personal use. In purchasing the Products, Plaintiff Ashton saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Ashton reasonably believed that the Folgers Classic Roast product contained enough ground coffee to make 240 cups or servings because she saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Ashton also reasonably believed that the Folgers Black Silk product contained enough ground coffee to make 210 cups or servings because she saw the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Ashton's reasonable belief that the Products she purchased could make the represented number of servings was an important factor in her decision to purchase the products. Plaintiff Ashton would have paid significantly less for the Products had she known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Ashton suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

10.      Plaintiff Jay Schoener is a citizen of the United States and the State of New York and he currently resides in Chenango County. In or around March and April 2020, Plaintiff

Schoener purchased the Folgers Classic Roast, 48 oz. product from a Walmart in Norwich, New York, for his own personal use. In purchasing the Product, Plaintiff Schoener saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Schoener reasonably believed that the Product contained enough ground coffee to make 380 cups or servings because he saw the representation "MAKES UP TO 380 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Schoener's reasonable belief that the Product he purchased could make the represented number of servings was an important factor in his decision to purchase the products. Plaintiff Schoener would have paid significantly less for the Product had he known that the Product did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Schoener suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

11. Plaintiff Ramon Ibarra is a citizen of the United States and the State of California and he currently resides in San Diego County. In or around December 2019, Plaintiff Ibarra purchased three of the Folgers French Roast, 24.2 oz. products from Garden Farms Market, a grocery store located in Lakeside, California, for his own personal use. In purchasing the Products, Plaintiff Ibarra saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Ibarra reasonably believed that the Folgers French Roast product contained enough ground coffee to make 210 cups or servings because he saw the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Ibarra's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the products. Plaintiff Ibarra would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Ibarra suffered injury

in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

12.     Plaintiff Frederick Tan is a citizen of the United States and the State of California and he currently resides in Los Angeles County. During the relevant class period, Plaintiff Tan purchased the Folgers Classic Roast, 30.5 oz. and Folgers Classic Decaf, 30.5 oz. in local markets, including Albertson's, Smart & Final, Vons and Ralph's, located near his home in Sherwood Forest, California, for his own personal use. In purchasing the Products, Plaintiff Tan saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Tan reasonably believed that the Folgers Classic Roast Product contained enough ground coffee to make 240 cups or servings because he saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Moreover, he reasonably believed that the Folgers Classic Decaf Product contained enough ground coffee to make 240 cups or servings because he saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister.  Plaintiff Tan's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the Products. Plaintiff Tan would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Tan suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

13.     Plaintiff Ellen Moser is a citizen of the United States and the State of Illinois and she currently resides in Lake County, Illinois. In February 2020, Plaintiff Moser purchased the Folgers Classic Roast, 30.5 oz. product from Walmart in Antioch, Illinois, for her own personal use. In purchasing the Product, Plaintiff Moser saw and relied on Defendants' representations

6

made on the packaging. Specifically, Plaintiff reasonably believed that the Product contained enough ground coffee to make 240 cups or servings because she saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Moser's reasonable belief that the Product she purchased could make the represented number of servings was an important factor in her decision to purchase the products. Plaintiff would have paid significantly less for the Product had she known that the Product did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Moser suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

14.     Plaintiff Marcia Sorin is a citizen of the United States and the State of Florida and she currently resides in Palm Beach County. In or around 2019, Plaintiff Sorin purchased the Folgers Classic Roast, 48 oz., Folgers Black Silk, 24.2 oz., and Folgers Classic Decaf, 30.5 oz., in local markets, including Publix, for her own personal use. In purchasing the Products, Plaintiff Sorin saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Sorin reasonably believed that the Folgers Classic Roast Product contained enough ground coffee to make 380 cups or servings because she saw the representation "MAKES UP TO 380 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Sorin also reasonably believed that the Folgers Black Silk Product contained enough ground coffee to make 210 cups or servings because she saw the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Sorin also reasonably believed that the Folgers Classic Decaf Product contained enough ground coffee to make 240 cups or servings because she saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Sorin's reasonable belief that the Products she purchased could make the

represented number of servings was an important factor in her decision to purchase the Products. Plaintiff Sorin would have paid significantly less for the Products had she known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Sorin suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

15.     Plaintiff Geoff Thomson is a citizen of the United States and the State of Texas and he currently resides in Liberty County, Texas. During the relevant class period, including in or around May 2020, Plaintiff Thomson purchased the Products, including the Folgers Classic Roast Product in 30.5 oz., 11.3 oz. and 48 oz., and the Folgers Colombian Roast Product in 10.3oz. Generally, the purchases were made about once every two weeks from his local H-E-B, Walmart, and Brookshires grocery stores, for his own personal use. In purchasing the Products, Plaintiff Thomson saw and relied on Defendants' representations made on the packaging. For example, Plaintiff Thomson reasonably believed that the 30.5 oz. Folgers Classic Roast contained enough ground coffee to make 240 cups or servings because he saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Thomson's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the Products. Plaintiff Thomson would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Thomson suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

16.     Plaintiff Julie Marthaller is a citizen of the United States and the State of Washington and she currently resides in Spokane County, Washington. In or around September

8

2020, Plaintiff Marthaller purchased the Folgers CoffeeHouse Blend, 25.4 oz Product from a WinCo Foods store in Spokane, Washington, for her own personal use. In purchasing the Product, Plaintiff Marthaller saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Marthaller reasonably believed that the Product contained enough ground coffee to make 210 cups or servings because she saw the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Marthaller's reasonable belief that the Product she purchased could make the represented number of servings was an important factor in her decision to purchase the products. Plaintiff Marthaller would have paid significantly less for the Products had she known that the Product did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Marthaller suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

17. Plaintiff Sharel Mawby is a citizen of the United States and the State of Missouri and she currently resides in Jackson County, Missouri. Periodically throughout the class period, Plaintiff Mawby purchased the following Folgers varieties: Classic Roast, 38.4 oz.; Country Roast, 31.1 oz.; 100% Columbian, 24.2 oz.; Black Silk, 24.2 oz.; Brazilian Blend, 24.2 oz.; Breakfast Blend, 38.5 oz., French Roast, 24.2 oz.; and House Blend, 24.2 oz., from Cosentino Sun Fresh located at 18001 E. US Highway 24 in Independence, Missouri and at Wal-Mart Supercenter located at 4000 S. Bolger Road, Independence Missouri, all for her own personal use. In purchasing these varieties, Plaintiff Mawby reasonably believed that the Classic Roast, 38.4 oz Product contained enough ground coffee to make 305 cups or servings because she saw the representation "MAKES UP TO 305 6 FL OZ CUPS" prominently printed on the front of the canister; that the Country Roast, 31.1 oz Product contained enough ground coffee to make 240

cups or servings because she saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister; that the Breakfast Blend, 38.5 oz Product contained enough ground coffee to make 315 cups or servings because she saw the representation "MAKES UP TO 315 6 FL OZ CUPS" prominently printed on the front of the canister; and that the 100% Columbian, 24.2 oz, Black Silk, 24.2 oz, the French Roast, 24.2 oz, the House Blend, 24.2 oz, and the Brazilian Blend, 24.2 oz Products each contained enough ground coffee to make 210 cups or servings because she saw the representation "MAKES UP TO 210 6 FL OZ CUPS" prominently printed on the front of the canisters. Plaintiff Mawby reasonably believed that the representations on the Products' packaging was accurate and would have paid significantly less for the Products had she known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Mawby suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

18. Plaintiff Rodger Smith is a citizen of the United States and the State of Florida and he currently resides in Broward County, Florida. On or around September 2, 2020, Plaintiff Rodger Smith purchased the Folgers Classic Decaf, 30.5 oz. Product from a Walmart located at 1199 S Federal Hwy, Pompano Beach, Florida 33062, for his own personal use. In purchasing the Product, Plaintiff Rodger Smith saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Rodger Smith reasonably believed that the Folgers Classic Decaf Product contained enough ground coffee to make 240 cups or servings because he saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Rodger Smith's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the products. Plaintiff

Rodger Smith would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Rodger Smith suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

19.     Plaintiff A. Kevin Fahey is a citizen of the United States who resides in Alexandria, Virginia. On or around May 18, 2020, Plaintiff Fahey purchased the Folgers Gourmet Supreme, 24.2 oz. Product from a Safeway located at 1100 4th Street SW, Washington DC, 20024, for his own personal use.

20.     The basis for Mr. Fahey's standing under DC Code 28-3905(k) and the manifestation of his alleged injury in fact is similar to that in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982), as interpreted by *Grayson v. AT & T Corp*., 15 A. 3d 219 (DC 2011).

21.     In short, Mr. Fahey's allegations he purchased the Defendant's product gives him "tester standing", as is described in more detail in the complaint removed from the District of Columbia to federal court, in the case captioned *Fahey v. Folgers Coffee Company*, No. 4:21-cv-00244 (W.D. Mo. Apr. 14, 2021), ECF No. 1-2, pp 7-11, incorporated herein by reference.

22.     Given Mr. Fahey's unique status as a "representative plaintiff" under DC Code § 28-3905(k) and the fact he is not seeking to represent a Class, all of the following allegations in this Amended Complaint referencing reliance and class-side allegations relevant to certification do not apply to his case (the "*Fahey* Action").  Mr. Fahey's allegations are that the D.C. General Public were (and are) mislead by the Defendant's packaging and that, for that reason, this Court should issue an injunction.  Further, Mr. Fahey does not need to plead any continued desire to purchase the Defendants' products in order to have standing to seek an injunction.

23.     Plaintiff Mark Smith is a citizen of the United States and the State of Missouri who

resides in Cass County, Missouri. On or around January 2021, Plaintiff Mark Smith purchased the Products. Plaintiff Smith purchased the Folgers Classic Coffee Roast, 30.5 oz. Product, the Folgers 100% Colombian Coffee, 24.2 oz. Product, the Folgers Country Roast Coffee, 31.1 oz. Product, and the Folgers Gourmet Supreme Coffee, 27.8 oz. Product. Plaintiff Mark Smith purchased the Folgers Classic Coffee Roast at a Sam's Club in Raymore, Missouri, and purchased the other roasts from a HyVee in Belton, Missouri and Walmart in Raymore, Missouri. Plaintiff Mark Smith purchased the foregoing Products all for his own personal benefit. In purchasing the Products, Plaintiff Mark Smith saw and relied on Defendants' representations made on the packaging. For example, Plaintiff Mark Smith reasonably believed that the Folgers Classic Roast 30.5 oz. Product contained enough ground coffee to make 240 cups or servings because he saw the representation "MAKES UP TO 240 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Mark Smith's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the Products. Plaintiff Mark Smith would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Mark Smith suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

24.    Plaintiff Deborah Bosso is a citizen of the United States and the State of New York and she currently resides in Niagara County, New York. In or around May 2018, Plaintiff Bosso purchased the Folgers Breakfast Blend, 38.5 oz. product from a Walmart in Niagara County, New York, for her own personal use. In purchasing the Product, Plaintiff Bosso saw and relied on Defendants' representations made on the packaging. Specifically, Plaintiff Bosso reasonably believed that the Products contained enough ground coffee to make 315 cups or servings because

she saw the representation "MAKES UP TO 315 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff Bosso's reasonable belief that the Product she purchased could make the represented number of servings was an important factor in her decision to purchase the Product. Plaintiff Bosso would have paid significantly less for the Product had she known that the Product did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff Bosso suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

25.     Plaintiff Kimberley Clark is a citizen of the United States and the State of Texas and she currently resides in Cherokee County.  In the past, Plaintiff Clark purchased Folgers ground coffee products (usually Folgers Classic Roast in the 11.3 oz size) approximately once every two weeks from her local H-E-B, Walmart, and Brookshires grocery stores.  In purchasing the products, Plaintiff Clark saw and relied on Defendant's representations made on the packaging. For example, Plaintiff Clark reasonably believed that the 11.3 oz. Folgers Classic Roast contained enough ground coffee to make 90 cups or servings because she saw the representation "MAKES UP TO 90 6 FL OZ CUPS" prominently printed on the front of the canister.  Plaintiff Clark's reasonable belief that the product she purchased could make the represented number of servings was an important factor in her decision to purchase the product.  Plaintiff Clark would have paid significantly less for the product had she known that the product did not contain enough ground coffee to make the represented number of servings of coffee. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

26.     Despite being misled by Defendants with respect to the Folgers ground coffee products they purchased, Plaintiffs lack personal knowledge as to Defendants' specific business

practices. Consequently, there is still doubt in their minds as to the possibility that some of the Products could contain enough coffee to make the advertised number of servings. For example, because there are many Folgers Products involved in Defendants' deceit, and due to the likelihood that Defendants may yet develop and market additional coffee products that misrepresent the serving yield, Plaintiffs, except Plaintiff Fahey, may again purchase a falsely-advertised ground coffee products from Defendants under the mistaken impression that the represented number of servings is accurate. Moreover, without scooping out every grain of ground coffee in the Products, Plaintiffs would have no way of determining whether the servings representations on the front labeling are accurate. Also, Class members will continue to purchase the Products, reasonably but incorrectly believing that they contain enough coffee to make the advertised number of servings.

27.     Plaintiffs, except for Plaintiff Fahey, are also susceptible to reoccurring harm in that they desire to continue to purchase the Products but cannot be certain Defendants have corrected their deceptive and false advertising scheme. Indeed, Plaintiffs, except for Plaintiff Fahey, regularly shop at stores where the Products are sold, and they would like to continue purchasing the Products. However, they currently cannot trust that Defendants will label and/or advertise the Products they purchased in the past truthfully and in compliance with applicable law.

28.     The J. M. Smucker Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. The J. M. Smucker Company is one of the world's biggest consumer packaged goods companies and is the ultimate parent company to The Folger Coffee Company.

29.     The Folger Coffee Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. Folgers has a rich history dating back to 1850 and is arguably the most well-

known coffee maker in the United States. The coffee giant excels in offering a wide range of products to customers, including varying flavors, roasts and strength of coffee. Beginning in 1850 in San Francisco, Folgers is now a household name recognized and sold around the world. Since the early 1990s, it has been the largest-selling ground coffee provider in the United States. In the 1980s, Folgers' slogan "The best part of waking up is Folgers in your cup!" and the well-associated jingle became recognizable in households across the country, along with the Folgers name. Folgers generates millions of dollars in sales each year, a significant portion of which is derived from sales of the Products. In 2008, Folgers was acquired by The J. M. Smucker Company from Procter & Gamble for a reported $3 billion.

## FACTUAL ALLEGATIONS

**A.      The Folgers Ground Coffee Products At Issue**

30.      The Products at issue in this case consist of all varieties (e.g., different types of roasts) and sizes (e.g., 20 oz., 30.5 oz., etc.) of Folgers ground coffee canisters.

31.      These Products include but are not limited to the following varieties of Folgers ground coffee canisters: Classic Roast, Classic Roast Decaf, ½ Caff, CoffeeHouse Blend, Country Roast, Simply Smooth, Simply Smooth Decaf, 100% Colombian, Black Silk, Black Silk Decaf, Brazilian Blend, Breakfast Blend, French Roast, Gourmet Supreme, House Blend, and Special Roast.

32.      The Products are sold across the United States through third party retailers including grocery chains and large retail outlets.

**B.      Defendants Grossly Overstate The Number Of Servings The Products Can Make**

33.      Defendants represent on the packaging of each of the Products that they contain enough ground coffee to make up to a specified number of servings. For example, Defendants prominently state on the front canister of the 30.5 oz. canister of Folgers Classic Roast Coffee:

"MAKES UP TO 240 6 FL OZ CUPS."

34.     Representative images of the front of the canisters of some of the Products are depicted below:







Case 4:21-md-02984-BP   Document 114   Filed 01/18/22   Page 18 of 60

35.     Defendants place a materially identical representation on the front label of all the Products, although the number of represented servings of course varies based on the size of the Product.

36.     On the back of all the Products, Defendants instruct consumers that they should use one tablespoon of ground coffee to make one serving (one 6 fl oz cup) of coffee.[3]

37.     One tablespoon of ground coffee weighs approximately 5 grams.

38.     Based on these standard measurements, it is evident that Defendants grossly overstate the number of servings the Products can make.

39.     By way of example, Defendants represent on the 30.5 oz. canister of the Folgers Classic Roast that it "MAKES UP TO 240 6 FL OZ CUPS."

40.     As set forth above, one tablespoon of ground coffee is needed to make 1 serving. Therefore, 240 tablespoons of ground coffee are needed to make 240 servings.

41.     As set forth above, one tablespoon of ground coffee = approximately 5 grams. Therefore, 1200 grams of ground coffee is needed to make 240 servings [240 tablespoons x 5 grams].

42.     However, the 30.5 oz. canister has a net weight of 865 grams. Therefore, it contains only 72% of the amount of ground coffee required to make up to 240 cups of coffee [865 / 1200 x 100%]. This is equivalent to approximately 173 cups of coffee.

43.     The same shortfall (i.e., only 173 cups of coffee) is calculated by dividing the total grams of coffee in the 30.5 oz. cannister by the number of grams required to make a single serving [865 grams / 5 grams].

_____
[3] Hereinafter, the term "cup" is synonymous, and used interchangeably with, the term "serving" and is equivalent to 6 fluid ounces, based on Defendants' representations.

44.     In sum, the 30.5 oz. canister only contains enough coffee to make 173 cups, which is equivalent to 72% of the amount of ground coffee that is required to make the 240 cups of coffee:

- 865 grams / 1200 grams = 72%
- 173 cups / 240 cups = 72%

45.     Thus, it is impossible for the Product to contain enough ground coffee to make anywhere close to "240 6 fl oz cups" of coffee, as promised by Defendants. Defendants' representation that the 30.5 oz. canister "MAKES UP TO 240 6 FL OZ CUPS" is therefore false, deceptive, and misleading.

46.     The same calculations apply equally to all of the other Products. According to their net weight, as well as the weight per tablespoon of ground coffee, they are unable to make anywhere close to the represented number of cups. These calculations are set forth in the following chart:

| Product Name | Net Weight | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|
| Classic Roast | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Roast | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Roast | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Roast | 38.4 oz. | 305 | 216 | 70.8% |
| Classic Roast | 48 oz. | 380 | 272 | 71.6% |
| Classic Roast | 51 oz. | 400 | 288 | 72% |
| Classic Decaf | 11.3 oz. | 90 | 64 | 71.1% |
| Classic Decaf | 22.6 oz. | 180 | 128 | 71.1% |
| Classic Decaf | 30.5 oz. | 240 | 173 | 72.0% |
| Classic Decaf | 33.9 oz. | 270 | 192.2 | 71.2% |
| 1/2 Caff | 10.8 oz. | 90 | 61.2 | 68% |
| 1/2 Caff | 25.4 oz. | 210 | 144 | 68.6% |
| CoffeeHouse Blend | 10.8 oz. | 90 | 61.2 | 68% |
| CoffeeHouse Blend | 25.4 oz. | 210 | 144 | 68.6% |

| | | | | |
|---|---|---|---|---|
| Country Roast | 25.1 oz. | 240 | 142.2 | 59.3% |
| Country Roast | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth | 23 oz. | 180 | 130.4 | 72.4% |
| Simply Smooth | 31.1 oz. | 240 | 176.4 | 73.5% |
| Simply Smooth | 34.5 oz. | 270 | 195.6 | 72.4% |
| Simply Smooth Decaf | 11.5 oz. | 90 | 65.2 | 72.4% |
| Simply Smooth Decaf | 23 oz. | 180 | 130.4 | 72.4% |
| 100% Colombian | 10.3 oz. | 90 | 58.4 | 64.9% |
| 100% Colombian | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk | 24.2 oz. | 210 | 137.2 | 65.3% |
| Black Silk Decaf | 10.3 oz. | 90 | 58.4 | 64.9% |
| Black Silk Decaf | 20.6 oz. | 180 | 116.8 | 64.9% |
| Brazilian Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| Brazilian Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Breakfast Blend | 10.8 oz. | 90 | 61.2 | 68% |
| Breakfast Blend | 25.4 oz. | 210 | 144 | 68.6% |
| Breakfast Blend | 38.5 oz. | 315 | 218 | 69.2% |
| French Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| French Roast | 24.2 oz. | 210 | 137.2 | 65.3% |
| Gourmet Supreme | 10.3 oz. | 90 | 58.4 | 64.9% |
| Gourmet Supreme | 24.2 oz. | 210 | 137.2 | 65.3% |
| Gourmet Supreme | 27.8 oz | 240 | 157.8 | 65.7% |
| House Blend | 10.3 oz. | 90 | 58.4 | 64.9% |
| House Blend | 24.2 oz. | 210 | 137.2 | 65.3% |
| Special Roast | 10.3 oz. | 90 | 58.4 | 64.9% |
| Special Roast | 24.2 oz. | 210 | 137.2 | 65.3% |

47. There are 42 varieties of the Products listed in the chart above. Each and every one of them contains substantially less ground coffee than is required to make the recommended number of "up to" servings promised on the packaging. On average, these Products contain enough ground coffee to make only 68.29% of the number of servings promised on the packaging, thus

revealing a systematic course of unlawful conduct by Defendants to deceive and shortchange consumers.

**C.     The False And Deceptive Serving Amount Representations Harm Consumers**

48.     Plaintiffs, except for Plaintiff Fahey, and other consumers purchased the Products relying on Defendants' serving amount representations on the Products' packaging.

49.     Plaintiffs and other consumers reasonably expect that, if they follow the serving instructions, the Products will produce the number of servings/cups of coffee as represented on the Products' packaging.

50.     Plaintiffs' (except for Plaintiff Fahey) and consumers' reasonable belief that the Products are able to make up to the represented number of cups of coffee was a significant factor in each of their decisions to purchase the Products.

51.     Plaintiffs and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of cups of coffee they are able to make. At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of cups of coffee they make over a period of time.

52.     As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendants knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

53.     Defendants also knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Defendants' serving size representations. Nonetheless, Defendants deceptively advertise the Products in order to deceive consumers into believing they are getting considerably more coffee than they are paying for.

54. Consumers are willing to pay more for the Products based on the belief that the Products contain enough ground coffee to make up to the represented number of servings. Plaintiffs, except for Plaintiff Fahey, and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

55. By analogy, if a consumer purchased a six-pack of soda, but only received four cans of soda, the consumer would only be receiving 66.67% of what she paid for. The situation here is no different in terms of the harm to the consumer. The only difference is that, due to the nature of the Products, Defendants are able to conceal the gross shortfall of coffee because reasonable consumers do not keep track of the number of cups of coffee they make over a period of time.

56. Therefore, Plaintiffs and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## **CLASS ACTION ALLEGATIONS**

57. Plaintiffs, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), bring this action on behalf of the following (the "Classes"):

- The "Nationwide Class": All persons who purchased any of the Products in the United States for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "Missouri Subclass": All persons who purchased any of the Products in Missouri for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "California Subclass": All persons who purchased any of the Products

in California for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "New York Subclass": All persons who purchased any of the Products in New York for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "Florida Subclass": All persons who purchased any of the Products in Florida for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "Illinois Subclass": All persons who purchased any of the Products in Illinois for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "Texas Subclass": All persons who purchased any of the Products in Texas for personal, family, or household purposes, within the applicable statute-of-limitations period.

- The "Washington Subclass": All persons who purchased any of the Products in Washington for personal, family, or household purposes, within the applicable statute-of-limitations period.

- This Complaint also is brought on behalf of the "D.C. General Public", for all persons who purchased any of the Products in the District of Columbia for personal, family, or household purposes, within the applicable statute of limitations period.

58. The State Subclasses listed above, with the exclusion of the Nationwide class, are collectively referred to as the "State Subclasses".

59. The Nationwide Class and State Subclasses listed above are collectively referred to as the "Classes."

60. Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates,

officers, and directors; all persons who make a timely election to be excluded from the Classes; the judge to whom this case is assigned and any immediate family members thereof; and any persons who assert claims for personal injury.

61. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

62. <u>Numerosity</u>: The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the tens of thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

63. <u>Common Questions Predominate</u>: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

- Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

- Whether Defendants' use of false or deceptive packaging and advertising constituted false or deceptive advertising;

- Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

- Whether Defendants' conduct violated the numerous state consumer

protection statutes alleged herein;

- Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

- Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

- Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

- Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

64. Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ground coffee to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

65. <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and

multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

66. <u>Typicality</u>: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

67. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and counsel.

68. <u>Declaratory and Injunctive Relief</u>: Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
(***By Plaintiff Sharel Mawby and Mark Smith on behalf of the Missouri Subclass***)

69. Plaintiffs Mawby and Mark Smith re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

70. Plaintiffs Mawby and Mark Smith bring this claim individually and on behalf of the Missouri Subclass.

71. The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise

in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1.

72.     The Products are "merchandise" pursuant to Mo. Rev. Stat. § 407.010(4), and Defendants are selling the Products in trade or commerce.

73.     As demonstrated above, Defendants' packaging and advertising constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices in connection with the sale or advertisement of the Products in that Defendant grossly overrepresents the number of servings that can be made with each Product.

74.     Defendants' misrepresentations regarding the Products are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition and use of the Products.

75.     At all relevant times, Defendants knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made, and that Plaintiff Mawby and other members of the Missouri Subclass would reasonably and justifiably rely on the representations about the Products in purchasing them.

76.     Plaintiffs Mawby and Mark Smith and members of the Missouri Subclass purchased the Products for personal, family, or household purposes.

77.     Plaintiffs Mawby and Mark Smith and other members of the Missouri Subclass reasonably and justifiably relied on Defendants' misleading and fraudulent packaging of the Products when purchasing them.

78.     Plaintiffs Mawby and Mark Smith and other members of the Missouri Subclass have suffered an ascertainable loss caused by Defendants because they would not have purchased the Products or would have paid significantly less for the Products, had they known that

Defendants' conduct was misleading and fraudulent.

79.     In addition, Defendant's conduct has caused Plaintiffs Mawby and Mark Smith and members of the Missouri Subclass irreparable injury.  As described herein, Defendants have engaged in unlawful and misleading conduct on a routine and automated basis, harming Class members in a uniform manner.  Unless restrained and enjoined, Defendants will continue such conduct. Therefore, Plaintiffs Mawby and Mark Smith request injunctive relief, and such other equitable relief as the Court deems just and proper.

## COUNT II
### Breach of Express Warranty
**(By Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark on behalf of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public)**

80.     Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

81.     Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark bring this claim individually and on behalf of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public.

82.     The various state laws cited below, upon which this Count is premised, are consistent with another, both procedurally and substantively.

83.     In addition to breaching Missouri's warranty law (R.S. Mo. § 400.2-313), Defendant also breached the following state warranty laws: California (Cal. Com. Code § 2313), District of Columbia (DC Code § 28-313), Florida (Fla. Stat. Ann. § 672.313), New York (N.Y. U.C.C. Law § 2-313), Texas (Tex. Bus. & Com. Code § 2.313), and Washington (Wash. Rev. Code Ann. § 62A.2-313).

84.     Express warranties by a seller of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

85.     These warranty statutes provide that any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise, and that any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

86.     Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark and the members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public formed a contract with Defendants at the time they purchased the Product. As part of that contract, Defendants have expressly warranted on the Products' packaging that they can make up to a specific number of servings. For example, Defendants expressly state on the packaging of the 30.5 oz. canister that it "MAKES UP TO 240 6 FL OZ CUPS." However, as alleged herein, this express representation is patently false, as the 30.5 oz. canister can only make up to 173 cups of coffee, or only 72% of the amount of ground coffee promised by Defendants. All of the other varieties of the Products contain materially identical express representations that are likewise false.

87.     These representations about the Products: (a) are affirmations of fact or promises made by Defendants to consumers that the Products contain enough ground coffee to make a specific number of servings; (b) became part of the basis of the bargain to purchase the Products when Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark

Smith, Bosso, and Clark and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description

88.     Defendants made the serving representations to induce Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso and Clark and members of the State Subclasses to purchase the Products, and Plaintiffs and members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public relied on the representations in purchasing the Products.

89.     Each such representation constitutes an express warranty and became part of the basis of the bargain between Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark and members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public, on the one hand, and Defendants, on the other.

90.     All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiffs and members of the State Subclasses.

91.     Defendants breached the express warranties about the Products because, as alleged above, the Products are not able to make the number of servings that are represented on the Products' labeling.

92.     Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public reasonably and justifiably relied

on the foregoing express warranties, believing that Products did in fact conform to the warranties.

93. Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso and Clark and members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark and members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them. Thus, as a result of Defendants' breaches of express warranty, Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso and Clark and members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public were damaged in the amount of the premium price they paid for the Product, in amounts to be proven at trial.

94. As a result of Defendants' breach of express warranties, Plaintiffs Ashton, Ibarra, Schoener, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Fahey, Mark Smith, Bosso, and Clark and members of the California, New York, Florida, Missouri, Washington, and Texas Subclasses and the D.C. General Public suffered injury and deserve to recover all damages afforded under the law.

95. On May 5, 2020, Plaintiff Ibarra, by and through his counsel, sent a notice letter by certified mail to The Folger Coffee Company providing notice of its breach and demanding that it correct, repair, replace, or otherwise rectify the breach complained of herein. And on May 7, 2020, Plaintiffs Ashton and Schoener, by and through their counsel, sent a notice letter by certified mail to The J. M. Smucker Company providing notice of its breach and demanding that it correct, repair,

replace, or otherwise rectify the breach complained of herein. On January 13, 2021, Plaintiff Clark, by and through her counsel, sent a notice letter by certified mail to The J.M. Smucker Company and The Folger Coffee Company providing notice of their breach and demanding that they correct, repair, replace, or otherwise rectify the breach complained of herein.

<u>**COUNT III**</u>
**Breach of Implied Warranty of Merchantability**
***(By Plaintiffs Ashton, Ibarra, Schoener, Mawby, Tan, Fahey, Mark Smith, Bosso, and Clark on behalf of the California, New York, Texas, and Missouri Subclasses, and the D.C. General Public)***

96.     Plaintiffs Ashton, Ibarra, Schoener, Mawby, Tan, Fahey, and Mark Smith, Bosso, and Clark re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

97.     Plaintiffs Ashton, Ibarra, Schoener, Mawby, Tan, Mark Smith, Bosso, and Clark bring this claim individually and on behalf of the California, New York, Texas, and Missouri Subclasses, and Plaintiff Fahey on behalf of the D.C. General Public.

98.     California, District of Columbia, New York, Texas, and Missouri's implied warranty of merchantability statutes all provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1); D.C. UCC Law §28-314; N.Y. U.C.C. Law § 2-314(1); Mo. Stat. § 400.2-314(1); Tex. Bus. & Com. Code § 2.314(a).

99.     California, District of Columbia, New York, Texas, and Missouri's implied warranty of merchantability statutes also state that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); D.C. Code §28-314(b)(iv); Mo. Stat. § 400.2-314(2)(f); N.Y. U.C.C. Law § 2-314(2)(2); Tex. Bus. & Com. Code § 2.314(b)(6).

100.     Defendants are merchants with respect to the sale of the Products at issue here.

Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California, District of Columbia, New York, Texas, and Missouri consumers.

101.    By advertising the Products with their current packaging, Defendants made an implied promise that the Products contain enough ground coffee to make up to a specific number of servings. The Products have not "conformed to the promises…made on the container or label" because they do not contain enough ground coffee to make up to the specified number of servings. Plaintiffs Ashton, Ibarra, Schoener, Mawby, Tan, Fahey, Mark Smith, Bosso, and Clark as well as California, District of Columbia, New York, Texas, and Missouri consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable.

102.    Therefore, the Products are not merchantable under California, District of Columbia, New York, Texas, and Missouri law and Defendants have breached their implied warranty of merchantability in regard to the Products.

103.    If Plaintiffs Ashton, Ibarra, Schoener, Mawby, Tan, Mark Smith, Bosso, and Clark and members of the California, New York, Texas, and Missouri Subclasses, and the D.C. General Public had known that the Products could not make as many servings of coffee as represented, they would not have been willing to pay the premium price associated with them.

104.    Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiffs Ashton, Ibarra, Schoener, Mawby, Tan, Fahey, Mark Smith, Bosso, and Clark and members of the California, New York, Texas, and Missouri Subclasses, and the D.C. General Public have suffered injury and deserve to recover all damages afforded under the law.

105.    On May 5, 2020, Plaintiff Ibarra, by and through his counsel, sent a notice letter by certified mail to The Folger Coffee Company providing notice of its breach and demanding that it correct, repair, replace, or otherwise rectify the breach complained of herein. On May 7, 2020,

Plaintiffs Ashton and Schoener, by and through their counsel, sent a notice letter by certified mail to The J. M. Smucker Company providing notice of its breach and demanding that it correct, repair, replace, or otherwise rectify the breach complained of herein.

106. On June 4, 2020, Plaintiff Fahey gave notice of this breach, pursuant to DC Code § 28-2:607(3)(a), to Defendants via Priority Mail.

107. On January 13, 2021, Plaintiff Clark, by and through her counsel, sent a notice letter by certified mail to The J.M. Smucker Company and The Folger Coffee Company providing notice of their breach and demanding that they correct, repair, replace, or otherwise rectify the breach complained of herein.

**COUNT IV**
**Violation California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
(***By Plaintiffs Ashton, Ibarra, and Tan for the California Subclass***)

108. Plaintiffs Ashton, Ibarra, and Tan re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

109. Plaintiffs Ashton, Ibarra, and Tan bring this claim individually and on behalf of the members of the proposed California Subclass.

110. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c), and the purchases of such Products by Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

111. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Defendants have represented and continue to represent that the Products have characteristics (i.e., contain enough ground coffee

to make up to a specified number of servings) that they do not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

112.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendants have represented and continue to represent that the Products are of a particular standard (i.e., that they contain enough ground coffee to make up to a certain number of servings) which they do not possess. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

113.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ground coffee to make up to a specified number of servings, but not intending to sell the Products as such, Defendants have violated section 1770(a)(9) of the CLRA.

114.    At all relevant times, Defendants have known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiffs Ashton, Ibarra, and Tan and other members of the California Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

115.    Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiffs Ashton, Ibarra, and Tan and members of California Subclass.

116.    Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid

significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee than required to make the promised number of servings.

117.    On May 5, 2020, Plaintiff Ibarra, by and through his counsel, sent a notice letter by certified mail to The Folger Coffee Company of his intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. The Folger Coffee Company received this notice and demand letter on May 9, 2020. And on May 7, 2020, Plaintiff Ashton, by and through her counsel, sent a notice letter by certified mail to The J. M. Smucker Company of their intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. The J. M. Smucker Company received this notice and demand letter on May 14, 2020.

118.    Because Defendants have failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after they received the foregoing notice and demand letters, Plaintiff Ashton, Ibarra, and Tan are timely filing this Complaint for damages as permitted under Cal. Civ. Code § 1782(d).

119.    Plaintiffs Ashton, Ibarra, and Tan request that this Court enjoin Defendants from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiffs Ashton, Ibarra, and Tan and the California Subclass. Plaintiffs Ashton, Ibarra, and Tan also request an award of actual damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to California Civil Code § 1780(a).

**<u>COUNT V</u>**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, et seq**
**(*By Plaintiffs Ashton, Ibarra, and Tan for the California Subclass*)**

120.    Plaintiffs Ashton, Ibarra, and Tan re-allege and incorporate Paragraphs 1-68 as if

fully set forth herein.

121.     Plaintiffs Ashton, Ibarra, and Tan bring this claim individually and on behalf of the members of the proposed California Subclass.

122.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

123.     Defendants have represented and continue to represent to the public, including Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass, through their deceptive packaging, that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants have violated the FAL.

124.     As a result of Defendants' false advertising, Defendants have and continue to unlawfully obtain money from Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass.

125.     Plaintiffs Ashton, Ibarra, and Tan request that this Court cause Defendants to restore this fraudulently obtained money to them and members of the California Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise,

Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass will be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT VI**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
(***By Plaintiffs Ashton, Ibarra, and Tan for the California Subclass***)

126. Plaintiffs Ashton, Ibarra, and Tan re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

127. Plaintiffs Ashton, Ibarra, and Tan bring this claim individually and on behalf of the members of the proposed California Subclass.

128. The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

129. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, the MMPA, the GBL, the FDUTPA, the ICFA, DTPA, the Washington Consumer Protection Act, and other applicable laws as described herein. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass.

130. Under the UCL, a business act or practice is "unfair" if the Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to

consumers who rely on the packaging. Deceiving consumers as to how many cups of coffee the Products can make is of no benefit to consumers. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiffs Ashton, Ibarra, and Tan, and members of California Subclass.

131.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendants misled Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass.

132.     Plaintiffs Ashton, Ibarra, and Tan request that this Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the California Subclass, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs Ashton, Ibarra, and Tan and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT VII**
**Violation of N.Y. Gen. Bus. Law § 349**
***(By Plaintiffs Schoener and Bosso for the New York Subclass)***

133.     Plaintiffs Schoener and Bosso re-allege and incorporates Paragraphs 1-68 as if fully

set forth herein.

134.     Plaintiffs Schoener and Bosso bring this claim individually and on behalf of the members of the proposed New York Subclass.

135.     New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." GBL § 349(a).

136.     The practices alleged herein – namely, deceiving consumers into believing that the Products contain enough ground coffee to make substantially more servings than they can actually make – are unfair, deceptive, and misleading, in violation of GBL § 349.

137.     The foregoing deceptive acts and practices were directed at Plaintiffs Schoener and Bosso and members of the New York Subclass.

138.     Defendants' misrepresentation regarding the Products is material to a reasonable consumer because it relates to the amount of product the consumer is receiving and paying for. A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchase decisions.

139.     Plaintiffs Schoener and Bosso and members of the New York Subclass have been injured as a direct and proximate result of Defendants' violations described above as they would have paid significantly less for the Products had they known that they do not contain enough ground coffee to make the represented number of servings.

140.     As a result of Defendants' unlawful action, Plaintiffs Schoener and Bosso and members of the New York Subclass seek to enjoin Defendants' deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars, or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## COUNT VIII
### Violation of N.Y. Gen. Bus. Law § 350
### (*By Plaintiffs Schoener and Bosso for the New York Subclass*)

141.    Plaintiffs Schoener and Bosso re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

142.    Plaintiffs Schoener and Bosso bring this claim individually and on behalf of the members of the proposed New York Subclass.

143.    GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

144.    In turn, GBL § 350-a defines false advertising as:

"advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

145.    Defendants' actions are untrue and misleading through their deceptive packaging of the Products, which represent that the Products contain enough ground coffee to make substantially more servings than they can actually make.

146.    The foregoing misleading acts and practices were directed at Plaintiffs Schoener and Bosso and members of the New York Subclass.

147.    Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the contents of the Products (i.e., the amount of coffee available) purchased by the consumer. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchase decisions.

148.    The foregoing misrepresentations have resulted in consumer injury or harm to the

42

Case 4:21-md-02984-BP   Document 114   Filed 01/18/22   Page 42 of 60

New York public.

149. Plaintiffs Schoener and Bosso and members of the New York Subclass have been injured as a direct and proximate result of Defendants' violations described above as they would not have purchased the Products, or would have paid significantly less for them, had they known that the Products are unable to make the number of servings as represented on the Products' front label.

150. As a result of Defendants' unlawful action, Plaintiffs Schoener and Bosso and members of the New York Subclass seek to enjoin Defendants' misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

<u>**COUNT IX**</u>
**Violation of District of Columbia Consumer Protection Act, DC Code § 28-3904 *et seq.*
("DCCPA")
(*By Plaintiff Fahey for the D.C. General Public*)**

151. Plaintiff Fahey re-alleges and incorporates Paragraphs 1-68 as if fully set forth herein.

152. Plaintiff Fahey brings this claim individually and on behalf of the DC General Public.

153. The DCCPA makes various trade practices unlawful, as described in more detail below.

154. Plaintiff Fahey is a "person" as defined by the DCCPA, specifically DC Code § 3905(k)(1).

155. The Products are consumer goods as defined by the DCCPA.

156. By marketing the Products in the manner described above, the Defendants violated

Case 4:21-md-02984-BP   Document 114   Filed 01/18/22   Page 43 of 60

various provisions of the DCCPA (DC CODE § 28-3904), which make it unlawful for merchants to, *inter alia*:

> (a)    Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> (e )    Misrepresent as to a material fact which has a tendency to mislead;
>
> (f )    Fail to state a material fact if such failure tends to mislead;
>
> (f-1)    Use innuendo or ambiguity as to a material fact, which has a tendency to mislead;
>
> (x)    Sell consumer goods in a condition not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Code.

157.    For these reasons, Plaintiff Fahey, on behalf of himself and the General Public of the District of Columbia, asks this court to award statutory or actual damages trebled for Plaintiff Fahey, attorneys' fees, and any other relief this Court deems just and proper.

## COUNT X
### Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")
#### (*By Plaintiffs Rodger Smith and Sorin for the Florida Subclass*)

158.    Plaintiff Rodger Smith and Sorin re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

159.    Plaintiff Rodger Smith and Sorin bring this claim individually and on behalf of the members of the proposed Florida Subclass.

160.    Fla. Stat. § 501.204 prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

161.    Plaintiff Rodger Smith and Sorin are "consumers" as defined by the FDUTPA.

162.    The Products are considered goods within the meaning and scope of the FDUTPA and Defendants are engaged in trade or commerce within the meaning and scope of FDUTPA in

connection with the sale and distribution of the Products.

163.  Defendants have engaged in unfair and deceptive practices under Fla. Stat. §
501.204 by overstating the number of servings in the Products.

164.  The FDUTPA further permits anyone who is "aggrieved by a violation" of the
statute to proceed with a suit for declaratory or injunctive relief.

165.  Plaintiffs Rodger Smith and Sorin, and members of the Florida Subclass, have been
aggrieved by Defendants' unfair and deceptive practices in violation of FDUTPA in that they
purchased and lost money on Defendants' deceptively labeled and marketed Products.

166.  As a direct result of Defendants' unfair and deceptive practices in violation of
FDUTPA, Plaintiffs Rodger Smith and Sorin, and the Florida Subclass, have suffered actual
damages, and therefore seek monetary damages, injunctive relief, attorneys' fees, and other relief
deemed appropriate by the Court under the FDUTPA.

<u>**COUNT XI**</u>
**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**815 ILCS §§ 505/1, *et seq*.**
(***By Plaintiff Moser for the Illinois Subclass***)

167.  Plaintiff Moser re-alleges and incorporates Paragraphs 1-68 as if fully set forth
herein.

168.  Plaintiff Moser brings this claim individually and on behalf of the members of the
proposed Illinois Subclass.

169.  The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815
ILCS §§ 505/1, *et seq*., provides protection to consumers by mandating fair competition in
commercial markets for goods and services.

170.  The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or
practices including using deception, fraud, false pretenses, false promises, false advertising,

misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2

171. The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers

172. Defendants are a "person" as defined by section 505/1(c) of the ICFA. Plaintiff Moser and each member of the Illinois Subclass are "consumers" as defined by section 505/1(e) of the ICFA. The Products are "merchandise" under the meaning of section 505/1(b) and their sale is within the meaning of "trade" or "commerce" under the ICFA.

173. Defendants have represented and continue to represent to the public, including Plaintiff Moser and members of the Illinois Subclass, through its deceptive packaging, that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants have violated the IFCA.

174. At all relevant times, Defendants have known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff Moser and other members of the Illinois Subclass would reasonably and justifiably rely on the packaging in purchasing the Products. Plaintiff is therefore informed and believes and thereon alleges that Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead Plaintiff Moser and the Illinois Subclass.

175. Plaintiff Moser and members of the Illinois Subclass have justifiably relied on

Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff Moser and members of the Illinois Subclass.

176. Defendants' misrepresentations and omissions regarding the amount of ground coffee contained in the Products were acts likely to mislead the Plaintiff Moser and the members of the Illinois Subclass acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

177. Plaintiff Moser and members of the Illinois Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee than needed to make the promised number of servings. As a result, Defendants have and continue to unlawfully obtain money from Plaintiff Moser and members of the Illinois Subclass.

178. Plaintiff Moser, on behalf of herself and the Illinois Subclass, seeks an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to correct their marketing and advertising messages on the Products to adequately disclose the material facts regarding the actual number of servings a Product will yield according to the Product's brewing instructions (otherwise, Plaintiff Moser and Illinois Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted); (3) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (4) requiring Defendant to restore to Plaintiff Moser and each Illinois Subclass member this unlawfully obtained money from them, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the ICFA or violating it in the

same fashion in the future as discussed herein.

## COUNT XII
### Violation of the Illinois Uniform Deceptive Trade Practices Act ("DTPA")
### 815 ILCS 510/1, *et seq.*
### (*By Plaintiff Moser for the Illinois Subclass*)

179.     Plaintiff Moser re-alleges and incorporates Paragraphs 1-68 as if fully set forth herein.

180.     Plaintiff Moser brings this claim individually and on behalf of the members of the proposed Illinois Subclass.

181.     815 ILCS 510/2(a)(5) prohibits "represent[ng] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …" By marketing the Products with their current packaging, Defendants have represented and continue to represent that the Products have characteristics (i.e., that they contain enough ground coffee to make up to a specified number of servings) that they do not have. Therefore, Defendants have violated section 510/2(a)(5) of the DTPA.

182.     815 ILCS 510/2(a)(7) prohibits "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendants have represented and continue to represent that the Products are of a particular standard (i.e., that they contain enough ground coffee to make up to a certain number of servings) which they do not possess. Therefore, Defendants have violated section 510/2(a)(7) of the DTPA.

183.     815 ILCS 510/2 (a)(9) prohibits "advertis[ing] goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ground coffee to make a specified number of servings, but not intending to sell the Products as such, Defendants have violated section 510/2(a)(9) of the DTPA.

184.    815 ILCS 510/2 (a)(12) prohibits "engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." By marketing the Products with their current packaging as containing enough ground coffee to make a specified number of servings which they do not contain, Defendants have engaged and continued to engage in conduct which is likely to create confusion or misunderstanding among consumers. Therefore, Defendants have violated section 510/2(a)(12) of the DTPA.

185.    The above-described deceptive and unfair acts and practices were used or employed in the course of trade or commerce—namely, the sale of the Products to Plaintiff Moser and members of the Illinois Subclass.

186.    At all relevant times, Defendants have known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff Moser and other members of the Illinois Subclass would reasonably and justifiably rely on the packaging in purchasing the Products. Plaintiff Moser is therefore informed and believes and thereon alleges that Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead Plaintiff Moser and the Illinois Subclass.

187.    Plaintiff Moser and members of the Illinois Subclass have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff Moser and members of the Illinois Subclass.

188.    Defendants' misrepresentations and omissions regarding the amount of ground coffee contained in the Products were acts likely to mislead the Plaintiff Moser and the members of the Illinois Subclass acting reasonably under the circumstances, and thus constitute unfair and

deceptive trade practices in violation of DTPA. Thus, the above-described deceptive and unfair acts offend public policy.

189.     Plaintiff Moser and members of the Illinois Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee to make the promised number of servings. As a result, Defendants have and continue to unlawfully obtain money from Plaintiff Moser and members of the Illinois Subclass.

190.     Plaintiff Moser, on behalf of herself and the Illinois Subclass, seeks an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to correct their marketing and advertising messages on the Products to adequately disclose the material facts regarding the actual number of servings a Product will yield according to the Product's brewing instructions (otherwise, Plaintiff Moser and Illinois Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted); and/or (3) to enjoin Defendants from violating the DTPA or violating it in the same fashion in the future as discussed herein.

<u>COUNT XIII</u>
**Violation of Washington Consumer Protection Act**
***(By Plaintiff Marthaller for the Washington Subclass)***

191.     Plaintiff Marthaller re-alleges and incorporates Paragraphs 1-68 as if fully set forth herein.

192.     Plaintiff Marthaller brings this claim individually and on behalf of the members of the proposed Washington Subclass.

193.     The Washington Consumer Protection Act restricts companies from committing

Case 4:21-md-02984-BP   Document 114   Filed 01/18/22   Page 50 of 60

deceptive or unfair acts or practices in either trade or commerce and declares them unlawful. See Wash. Rev. Code § 19.86.020.

194.    Defendants have engaged in unfair and deceptive practices under Wash. Rev. Code § 19.86.020 by overstating the number of servings that can be made by each of the Products.

195.    As a direct result of Defendants' unfair and deceptive practices, Plaintiff Marthaller and the Washington Subclass has suffered actual damages.

196.    Defendants' violations entitle Plaintiff and each member of the Washington Subclass to their costs, attorney fees, and damages in an amount to be determined at trial. Wash. Rev. Code § 19.86.090. Plaintiff Marthaller is also entitled to both prejudgment and post-judgment interest.

<u>**COUNT XIV**</u>
**Common Law Fraud**
(***By Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark on behalf of the Classes***)

197.    Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

198.    Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark bring this claim individually and on behalf of the members of the proposed Nationwide Class. Alternatively, Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark bring this claim individually and on behalf of the members of the proposed State Subclasses.

199.    Defendants marketed the Products in a manner indicating that they contain enough ground coffee to make up to a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendants have made

misrepresentations about the Products.

200.    Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

201.    At all relevant times when such misrepresentations were made, Defendants knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

202.    Defendants intend that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants.

203.    Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

204.    Therefore, as a direct and proximate result of Defendants' intentional misrepresentations, Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT XV
## Negligent Misrepresentation
### (By Plaintiffs Thomson, Marthaller, Sorin, Mawby, Rodger Smith, Mark Smith, and Clark on behalf of the Classes)

205.     Plaintiffs Thomson, Marthaller, Sorin, Mawby, Rodger Smith, Mark Smith, and Clark re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

206.     Plaintiffs Thomson, Marthaller, Sorin, Mawby, Rodger Smith, and Mark Smith bring this claim individually and on behalf of the members of the Classes. Alternatively, Plaintiffs Thomson, Marthaller, Sorin, Mawby, Rodger Smith, Mark Smith, and Clark bring this claim individually and on behalf of the members of the proposed State Subclasses.

207.     Defendants marketed the Products in a manner indicating that they contain enough ground coffee to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendants have made misrepresentations about the Products.

208.     Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

209.     At all relevant times when such misrepresentations were made Defendants knew or had been negligent in not knowing that that the Products did not contain enough ground coffee to make the specified number of servings. Defendants had no reasonable grounds for believing their misrepresentations were not false and misleading.

210.     Defendants intend that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants.

211. Plaintiffs Thomson, Marthaller, Sorin, Mawby, Rodger Smith, Mark Smith, and Clark and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

212. Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs Thomson, Marthaller, Sorin, Mawby, Rodger Smith, Mark Smith, and Clark and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### COUNT XVI
### Unjust Enrichment/Quasi-Contract
**(By Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark on behalf of the Classes)**

213. Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark re-allege and incorporate Paragraphs 1-68 as if fully set forth herein.

214. Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark bring this claim individually and on behalf of the members of the Classes. Alternatively, Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark bring this claim individually and on behalf of the members of the proposed State Subclasses.

215. As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes to induce them to purchase the Products. Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan,

Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes therefore have been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

216. Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiffs and members of the Classes.

217. The monies received were obtained under circumstances that were at the expense of Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes – i.e., Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

218. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

219. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs

Ashton, Schoener, Ibarra, Moser, Thomson, Marthaller, Tan, Sorin, Mawby, Rodger Smith, Mark Smith, Bosso, and Clark and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

<u>COUNT XVII</u>
**Violation of Texas Unfair Practices Act, Tex. Bus. Comm. Code §§ 17.41 *et seq*.**
***(By Plaintiff Clark on behalf of Texas Subclass)***

220. Plaintiff Clark re-alleges and incorporates Paragraphs 1-68 as if fully set forth herein.

221. Plaintiff Clark is a consumer under § 17.45(4) and Defendants are persons engaged in trade or commerce under § 17.45(3) and § 17.46(a) of the Texas Unfair Practices Act ("TUPA").

222. The TUPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." § 17.46.(a)

223. Defendants knowingly violated the TUPA by representing in their advertising that the Products make "up to" a specified number of servings of coffee, when they do not contain enough ground coffee to make that number of servings.

224. Pursuant to Tex. Bus. Comm. Code § 17.50 Plaintiff seeks injunctive relief, actual damages, statutory damages, attorneys' fees, costs, and any other relief to which she and her fellow consumers are entitled.

225. On January 13, 2021, Plaintiff Clark sent a notice letter to Defendants as required under § 17.505(a). More than sixty days have passed since the letter was sent and Defendants have not remedied their conduct.

226. In that letter, Plaintiff Clark informed Defendants that their representations were in violation at least the following subsections of section 17.46(b): (b)(5) (representing that goods or

services have quantities which they do not have), (b)(7) (representing that goods or services are of a particular standard, quality, or grade if they are of another), (b)(9) (advertising goods with the intent not to sell them as advertised), (b)(20) (representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve), and (b)(24) (failing to disclose information that was known to Defendants at the time of sale that would have led the consumer to not have purchased the goods on Defendants' terms had it been disclosed). The letter further informed Defendants that as to Plaintiff Clark, they had breached both express and implied warranties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the proposed Classes, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying the Classes as requested herein, designating Plaintiffs as the class representatives and appointing the undersigned counsel as class counsel;

B. Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

C. Ordering restitution and disgorgement of all profits and unjust enrichment Defendants obtained from Plaintiffs and the Classes as a result of Defendants' unlawful, unfair and fraudulent business practices;

D. Ordering payment of damages as permitted by law, including actual, compensatory, and statutory damages, to the full extent permitted by law;

E. Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to

engage in a corrective advertising campaign;

F.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

G.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

DATED: January 18, 2022

By:    */s/ Tim E. Dollar*
      Tim E. Dollar

Tim E. Dollar, Missouri Bar No. 33123
**DOLLAR BURNS & BECKER, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
Email:  timd@dollar-law.com

Todd D. Carpenter (*pro hac vice*)
Scott G. Braden (*pro hac vice*)
Katrina Carroll *(pro hac vice)*
**CARLSON LYNCH, LLP**
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.: 619-762-1900
Fax: 619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com
kcarroll@carlsonlynch.com

Lubna M. Faruqi (*pro hac vice*)
Timothy J. Peter (*pro hac vice*)
Nina M. Varindani (*pro hac vice*)
Benjamin Heikali (*pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor

New York New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
lfaruqi@faruqilaw.com
tpeter@faruqilaw.com
nvarindani@faruqilaw.com
bheikali@faruqilaw.com

Bonner C. Walsh (*pro hac vice*)
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022 a true and correct copy of the foregoing was electronically filed. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

By: */s/Tim E. Dollar*
Tim E. Dollar, Missouri Bar No. 33123